**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

MEDIEN PATENT VERWALTUNG AG,

                  Plaintiff,

      v.

WARNER BROS. ENTERTAINMENT
INC., TECHNICOLOR INC. and DELUXE
ENTERTAINMENT SERVICES GROUP
INC.,

                Defendants.

Civil Action No. 1:10-cv-04119-CM

ECF Case

**JURY TRIAL DEMANDED**

**REPLY CLAIM CONSTRUCTION BRIEF
OF PLAINTIFF MEDIEN PATENT VERWALTUNG AG**

Jeffrey D. Sanok
Andrew M. Riddles
Sean E. Jackson (*pro hac vice*)
**CROWELL & MORING LLP**
590 Madison Avenue, 20th Floor
New York, NY  10022
Ph:  (212) 223-4000
Fax:  (212) 223-4134
jsanok@crowell.com
ariddles@crowell.com
sjackson@crowell.com

*Attorneys for Plaintiff Medien Patent
Verwaltung AG*

## <u>TABLE OF CONTENTS</u>

I.    "MARKINGS" ARE DEFINED BY THE '633 PATENT AS "A CHANGE TO AT LEAST ONE READABLE PROPERTY OF THE MEDIUM" ...................................1

II.   "MARKINGS BEING READABLE TOGETHER WITH" SHOULD BE ACCORDED ITS PLAIN AND ORDINARY MEANING .................................................4

III.  THE INTRINSIC EVIDENCE SUPPORTS THE CONSTRUCTION OF "SEQUENCE OF MARKINGS" AS PROPOSED BY MPV ............................................6

IV.   CONCLUSION..............................................................................................10

i

## TABLE OF AUTHORITIES

**Cases**

*Comark Commc'ns, Inc. v. Harris Corp.*,
 156 F.3d 1182 (Fed. Cir. 1998)..................................................................4

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
 381 F.3d 1111 (Fed. Cir. 2004)..................................................................7

*Johnson Worldwide Assocs., Inc. v. Zebco Corp.*,
 175 F.3d 985 (Fed. Cir. 1999)....................................................................6

*K-2 Corp. v. Salomon S.A.*,
 191 F.3d 1356 (Fed. Cir. 1999)..................................................................4

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
 358 F.3d 898 (Fed. Cir. 2004)....................................................................8

*Markman v. Westview Instruments, Inc.*,
 52 F.3d 967 (Fed. Cir. 1995)......................................................................2

*MBO Labs., Inc. v. Becton, Dickinson & Co.*,
 474 F.3d 1323 (Fed. Cir. 2007)...........................................................3, 5, 10

*N. Telecom Ltd. v. Samsung Elecs. Co., Ltd.*,
 215 F.3d 1281 (Fed. Cir. 2000)...............................................................2, 4

*Philips v. AWH Corp.*,
 415 F.3d 1303 (Fed. Cir. 2005)............................................................2, 3, 7

*Power-One, Inc. v. Artesyn Techs., Inc.*,
 599 F.3d 1343 (Fed. Cir. 2010)..................................................................3

*Rambus Inc. v. Infineon Techs. AG*,
 318 F.3d 1081 (Fed. Cir. 2003)..................................................................9

*Renishaw PLC v. Marposs Societa' Per Azioni*,
 158 F.3d 1243 (Fed. Cir. 1998)...............................................................2, 6

*Scimed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*,
 242 F.3d 1337 (Fed. Cir. 2001)..................................................................4

*Searfoss v. Pioneer Consol. Corp.*,
 374 F.3d 1142 (Fed. Cir. 2004)..................................................................4

ii

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
    299 F.3d 1313 (Fed. Cir. 2002)..............................................................................8

*Texas Digital Sys., Inc. v. Telegenix, Inc.*,
    308 F.3d 1193 (Fed. Cir. 2002)..............................................................................6

**Regulations**

37 C.F.R. § 1.73 ..............................................................................................................8

iii

Plaintiff Medien Patent Verwaltung AG ("MPV") submits this Reply Claim Construction Brief in response to Defendants Warner Bros. Entertainment Inc.'s ("WB") and Technicolor Inc.'s ("Technicolor") (collectively "WB/Technicolor") Responsive Claim Construction Brief (Dkt. No. 72) and Defendant Deluxe Entertainment Services Group Inc.'s ("Deluxe") Phase One Claim Construction Brief (Dkt. No. 73), and in further support of its proposed construction of the disputed claim terms of U.S. Patent No. 7,187,633 ("the '633 patent").

The Court should adopt MPV's proposed claim constructions because they most faithfully comport with the intrinsic evidence and recognize the specific definitions provided by the inventor of the '633 patent.  In contrast, Defendants' proposed constructions run afoul of accepted principles of claim construction by ignoring the inventor's chosen meanings and reading extraneous limitations into the claim language.

## I.  "MARKINGS" ARE DEFINED BY THE '633 PATENT AS "A CHANGE TO AT LEAST ONE READABLE PROPERTY OF THE MEDIUM"

| MPV's Proposed Construction or Position | Deluxe's Proposed Construction or Position | WB/Technicolor's Proposed Construction or Position |
|---|---|---|
| "a change to at least one readable property of the medium" | "readable content added to the medium" | There is no need to define this term. This term should be accorded its plain and ordinary meaning to one of ordinary skill in the pertinent art.  Further defining this term will not assist the trier of fact to better understand its meaning.<br><br>WB/Technicolor believe that the correct "markings" terms to be construed are those set forth by WB/Technicolor below in Section III. |

As demonstrated by MPV in its opening brief, the inventor of the '633 patent, Mr. Lehmann, clearly set forth the particular meaning for the term "markings" proposed by MPV. MPV Opening Br. at 10-11.  Quite simply, the claim construction inquiry ends here because that particular meaning controls the interpretation of the term "markings."  *Philips v. AWH Corp.*,

1

415 F.3d 1303, 1316 (Fed. Cir. 2005) (en banc) ("the specification may reveal a special definition given to a claim term by the patentee . . . .   In such cases, the inventor's lexicography governs.").

The Defendants' proposed constructions for the term "markings" should be rejected outright because they depart from the definition provided by the inventor.  Deluxe seeks to substitute for the clearly defined meaning of "markings" an indefinite phrase "readable content added to the medium."   Deluxe's proposed construction, however, only serves to create ambiguity because "content" is not defined in the context of the '633 patent.  The '633 patent speaks only of properties and information.   Thus, even if Deluxe's definition is accepted, the scope and meaning of "markings" would be unclear.

In an attempt to support the arbitrary inclusion of "content," Deluxe relies exclusively on the teaching of the '633 patent that a sequence of markings can be "read out together" with information intended for reproduction.  Deluxe Br. at 13-14.  That "markings" are readable is not disputed, but neither the words of the claims nor the description relied on by Deluxe attribute readability only to "content" or limit a readable property to readable content.  *See N. Telecom Ltd. v. Samsung Elecs. Co., Ltd.*, 215 F.3d 1281, 1290 (Fed. Cir. 2000) ("This court has repeatedly and clearly held that it will not read unstated limitations into claim language."); *Renishaw PLC v. Marposs Societa' Per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998) (the "claim construction inquiry . . . begins and ends in all cases with the actual words of the claim.").

Deluxe's proposed construction for "markings" should be rejected for the additional reason that it directly contradicts the intrinsic evidence by limiting the formation of "markings" to the <u>addition</u> of readable content.  *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996) (claims "must be read in view of the

2

specification, of which they are a part.").  The specification of the '633 patent is clear that "markings" are formed by changing one or more readable properties of the medium (e.g., magnetic, mechanical, or optical properties).  The formation can be accomplished in a variety of ways, including through mechanical operations or non-contact methods, such as by laser.  *See*, *e.g.*, Jackson Decl., Exh. C at col. 2, lines 33-35 (Dkt. No. 71).  Since a laser changes a readable property through removal and not addition, Deluxe's proposed construction would exclude the use of lasers as one preferred method of forming "markings."  *See MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1333 (Fed. Cir. 2007) ("A claim interpretation that excludes a preferred embodiment from the scope of the claim is rarely, if ever, correct.").  Indeed, common experience demonstrates the falsity of Deluxe's statement that "deleting . . . something is the antithesis of 'forming' something" (Deluxe Br. at 17) because in geology many rock formations are formed by the process of erosion.

For their part, WB/Technicolor argue that no construction of "markings" is necessary because the term will be understood "in its ordinary, everyday sense" and a lay juror "will more readily understand" its meaning "without further, unnecessary explication."  WB/Technicolor Br. at 18.  WB/Technicolor fail to account, however, for the controlling interpretation of "markings" that is clearly stated in the '633 patent.  *See Philips*, 415 F.3d at 1316.  Accordingly, permitting lay jurors to apply a commonly-understood "lay meaning" to "markings" would ignore the governing interpretation of the term and fail to serve the important purpose of claim construction.  *See id*. at 1313 ("[the] meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art . . ."); *Power-One, Inc. v. Artesyn Techs., Inc.*, 599 F.3d 1343, 1348 (Fed. Cir. 2010) ("The [claim] terms, as construed by the court, must 'ensure that the jury fully understands the court's claim construction rulings and what the patentee

covered by the claims.'"); *Searfoss v. Pioneer Consol. Corp.*, 374 F.3d 1142, 1149 (Fed. Cir. 2004) ("What the claim terms would mean to laymen is irrelevant.").

## II.   "MARKINGS BEING READABLE TOGETHER WITH" SHOULD BE ACCORDED ITS PLAIN AND ORDINARY MEANING

| MPV's Proposed Construction or Position | Deluxe's Proposed Construction or Position | WB/Technicolor's Proposed Construction or Position |
|---|---|---|
| There is no need to define this term beyond defining the term "markings" as proposed by MPV above in Section I.  In all other respects, this term should be accorded its plain and ordinary meaning to one of ordinary skill in the pertinent art.  Further defining this term will not assist the trier of fact to better understand its meaning. | "markings are concurrently recognized for reproduction [play back] in the same manner as and in addition to the information intended for reproduction" | There is no need to define this term.  This term should be accorded its plain and ordinary meaning to one of ordinary skill in the pertinent art.  Further defining this term will not assist the trier of fact to better understand its meaning. |

Beyond construing the term "markings" in accordance with its controlling meaning set forth in the '633 patent, there is no reason to construe "markings being readable together with" in a manner other than in accordance with its plain and ordinary meaning.  *See K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1362-63 (Fed. Cir. 1999) ("the ordinary and accustomed meaning of a disputed claim term is presumed to be the correct one").  With the exception of the term "markings," WB/Technicolor essentially agree with MPV on this point.

It is a "cardinal sin" of patent law to read a limitation from the written description into the claims.  *See Scimed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1340 (Fed. Cir. 2001); *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998) ("limitations from the specification are not to be read into the claims").  Yet, Deluxe's proposed construction would do just that by reading into the claim language three unstated limitations, namely, "concurrently recognized for reproduction," "in the same manner," and "in addition to."  *See* MPV Opening Br. at 14-15.  Therefore, Deluxe's proposed construction for "markings being readable together with" should be rejected.  *See N. Telecom*, 215 F.3d at 1290.

4

Deluxe attempts to support its proposed construction by relying on three examples in the specification of the '633 patent that state that markings can be read out simultaneously with analog information, thereby justifying inclusion of an arbitrary "concurrently recognized for reproduction" claim limitation.  Deluxe Br. at 20-21.  Deluxe does not cite any instance, however, where the '633 patent discusses the concept of "reading out together" with any requirement that it occur "concurrently."  The markings and the analog information are read out simultaneously only in the sense that the markings are a part of the analog sound track and they are read out along with the analog information.  *See*, *e.g.*, Jackson Decl., Exh. C at col. 1, lines 51-54; col. 6, lines 15-17; col. 8, lines 31-34; Abstract.  Indeed, Deluxe's proposed construction should be rejected for excluding the preferred embodiment depicted in Figure 3a of the '633 patent which shows parallel bar-shaped markings being read out serially (not concurrently) with the sound information contained in sound track 20.  *See MBO Labs*, 474 F.3d at 1333.  Further, the markings are never "recognized" as such by the playback equipment.  They are merely read out along with the analog information.

The incorporation of "in the same manner" and "in addition to" is unwarranted by the intrinsic evidence.  MPV Opening Br. at 15-16.  The indefinite phrase "in the same manner" is found nowhere in the intrinsic evidence and so adoption of this unexplained term would only create ambiguity, while the phrase "in addition to" is inconsistent with how the invention is practiced and would improperly exclude a preferred embodiment.  In response to its errors of claim construction, Deluxe can only offer speculative attorney argument as to why this readily understandable term should be unjustifiably limited and contorted to the point of incoherence. *See* Deluxe Br. at 21.

5

In sharp contrast to Deluxe's proposed construction, which seeks to narrow the claim term by reference to the written description without any invitation by the claim language to do so, *see Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 989-90 (Fed. Cir. 1999), according "markings being readable together with" its ordinary and accustomed meaning is consistent with and supported by the intrinsic evidence.  *See Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1203-04 (Fed. Cir. 2002) (quoting *Renishaw*, 158 F.3d at 1250) ("The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.").

## III.    THE INTRINSIC EVIDENCE SUPPORTS THE CONSTRUCTION OF "SEQUENCE OF MARKINGS" AS PROPOSED BY MPV

| MPV's Proposed Construction or Position | Deluxe's Proposed Construction or Position | WB/Technicolor's Proposed Construction or Position |
|---|---|---|
| There is no need to define this term beyond defining the term "markings" as proposed by MPV above in Section I. and defining the respective terms "individualizes the medium", "individualize the medium", and "individualizing the medium" as proposed and agreed by the parties in the Joint Claim Construction Statement.  In all other respects, this term should be accorded its plain and ordinary meaning to one of ordinary skill in the pertinent art.  Further defining this term will not assist the trier of fact to better understand its meaning. | Deluxe believes that the correct terms in this phrase are to be construed as those set forth by Deluxe above in Section I. and as proposed and agreed by the parties in the Joint Claim Construction Statement. | "an identifier whose distinctive characteristics permit the identification of the medium regardless of the identifier's location on the medium" |

Apart from construing the term "markings" in accord with its governing meaning expressly assigned by the inventor of the '633 patent, no further construction of "sequence of markings" is warranted.  As MPV explained in its opening brief, "sequence of markings" is a straight-forward combination of the term "markings," the agreed-to "individualizing the medium" limitations, and the term "sequence."  The modification of "markings" by "sequence" does not impart any special meaning to that combination and the intrinsic evidence demonstrates

6

that "sequence" is used by the '633 patent in accordance with its plain and ordinary meaning, that is, a series or set.  There is no express or implied limitation of "sequence" throughout its use in the specification of the '633 patent.  Indeed, the preferred embodiments depicted by the several figures of the patent support MPV's position.  *See*, *e.g.*, Jackson Decl., Exh. C at Figures 3a and 4 (series of markings); Figure 3b (set of markings).  Deluxe also recognizes that the term "sequence" carries no special meaning and thus agrees that "sequence of markings" requires no further construction beyond what has been proposed for the term "markings."

WB/Technicolor contend otherwise, but their proposed construction for "sequence of markings" should be rejected for violating basic principles of claim construction.  That is, WB/Technicolor disregard the specific meaning attributed by the inventor to the term "markings" of "a change to at least one readable property of the medium."  This specific meaning controls the claim construction analysis.  *See Philips*, 415 F.3d at 1316.  Further, providing the term "sequence" with its plain and ordinary meaning does not deprive the term of its meaning within the context of the claim.  MPV's proposed construction is fully consistent with the presumption that "sequence" adds meaning to the claim.  *See Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1119 (Fed. Cir. 2004) ("all claim terms are presumed to have meaning in a claim.").

WB/Technicolor attempt to support their proposed construction by relying exclusively on statements that appear in the "Summary of Invention" section of the '633 patent.  By doing so, however, WB/Technicolor seek to improperly limit the scope of the claims based on the exemplary description provided in the specification.  What the entirety of the specification actually describes, however, does not warrant the imposition of such a limitation.  Indeed, the

7

narrow claim scope urged by WB/Technicolor is directly refuted by the patent's explicit teachings.

In relying on the "Summary of Invention" section of the '633 patent, WB/Technicolor insinuate that statements appearing in that section serve to limit the scope and meaning of the claims. *See* WB/Technicolor Br. at 7-13. But a summary is merely a formal requirement of the United States Patent and Trademark Office for patent applications. *See* 37 C.F.R. § 1.73 ("A brief summary of the invention . . . should precede the detailed description."). WB/Technicolor cite no authority for their bald proposition that by virtue of mere placement in the "Summary of Invention" section of the '633 patent, statements constitute a limitation on the scope and meaning of the claims.

It is the substance of the disclosure throughout the entirety of the specification that is critical, not its location. Specifically, a "patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'" *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) (quoting *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002)). Here, the "Summary of Invention" does not restrict the scope of the invention, but merely describes various aspects of the preferred embodiments. *See*, *e.g.*, Jackson Decl., Exh. C at col. 2, line 36 ("According to another aspect of the present invention"); col. 2, lines 59-62 ("The markings are <u>preferably</u> not directly readable, individually or as a whole. To fulfill this requirements, the sequence of markings <u>can</u> represent an identification code. The identification <u>can</u> be a binary code, a grid code, or a barcode."); col. 3, lines 1-3 ("<u>Other coding types</u> which can be implemented using a sequence of markings <u>can also be used</u> to identify the medium."); col. 3, lines 21-25 ("The sequence of markings . . . <u>can be formed only once</u> (e.g. at a unique

8

location) on the medium.  However, forming the sequence . . . several times, spatially displaced, . . . <u>can also be considered</u>."); col. 3, line 26 ("According to a <u>variation</u> of the invention"); col. 4, line 28 ("According to a <u>further aspect</u> of the invention") (all emphasis added).  When the "Summary of Invention" section is read in its proper context and in conjunction with the remainder of the specification, it is clear that there is no disclaimer or disavowal of claim scope. *See Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1094-95 (Fed. Cir. 2003) (holding that the patentee's description of "the present invention" in the Summary of Invention section did not limit the ordinary meaning of "bus" in view of the entire specification and prosecution history). Accordingly, no limitation has been placed on the plain and ordinary meaning of "sequence of markings."

WB/Technicolor argue that the specification limits the function of individualizing the medium exclusively to a "sequence of markings," as opposed to individual markings alone. WB/Technicolor Br. at 6-9.  But incorporating any such limitation into the construction of "sequence of markings" is redundant because the language of the asserted claims already requires that the individualizing function is accomplished by the "sequence of markings." WB/Technicolor's proposed construction would needlessly incorporate redundancy and ambiguity into the claims by implicitly including language already explicit in the claims.

WB/Technicolor also argue that the location of the "sequence of markings" cannot contribute to individualizing the medium.  WB/Technicolor Br. at 12.  This argument lacks merit for at least two reasons.  One, where on the medium a marking is to be read constitutes a readable property.  Thus, a change to a readable property of the medium, that is, a "marking," can be its specific location on the medium.  Two, the specification of the '633 patent explicitly states that the location of the "sequence of markings" can serve to individualize the medium.

Jackson Decl., Exh. C at col. 3, lines 21-23 ("The sequence of markings which individualizes the medium can be formed only once (e.g., at a unique location) on the medium.") (emphasis added).

WB/Technicolor further contend that, to the exclusion of other "coding types," a "sequence of markings" can only serve to identify the medium based on the specific "distinctive" characteristics of a "binary code, a grid code or a barcode" *See* WB/Technicolor Br. at 10, 12 n. 6. This would improperly read a preferred embodiment into the claims. *See MBO Labs*, 474 F.3d at 1333. To the contrary, while these particular codes can be used, so too can other types of coding. *See* Jackson Decl., Exh. C at col. 3, lines 1-3. Indeed, the specific types of coding arbitrarily excluded by WB/Technicolor are explicitly contemplated by the '633 patent, such as specific location, the number of instances of the code, and/or the relative location of multiple codes in relation to one another. *See, e.g.,* respectively, Jackson Decl., Exh. C at col. 3, lines 21-23 ("The sequence of markings which individualizes the medium can be formed only once (e.g., at a unique location) on the medium."); col. 3, lines 23-25 ("However, forming the sequence of markings several times, spatially displaced, on the medium can also be considered.") (all emphasis added).

IV.     **CONCLUSION**

Defendants' proposed claim constructions should be rejected because they are inconsistent with the intrinsic evidence, overly narrow, and seek to improperly import unstated limitations into the claims. In contrast, MPV's interpretations of the disputed claim terms of the '633 patent are directly supported by the intrinsic evidence and reflect the understanding of a person of ordinary skill in the art. Accordingly, the constructions proposed by MPV should be adopted by the Court.

Dated:  June 24, 2011                    By:    s/ Sean E. Jackson
                                                Jeffrey D. Sanok
                                                Andrew M. Riddles
                                                Sean E. Jackson (*pro hac vice*)
                                                **CROWELL & MORING LLP**
                                                590 Madison Avenue, 20th Floor
                                                New York, NY  10022
                                                Ph:  (212) 223-4000
                                                Fax:  (212) 223-4134
                                                jsanok@crowell.com
                                                ariddles@crowell.com
                                                sjackson@crowell.com

                                                *Attorneys for Plaintiff Medien Patent*
                                                *Verwaltung AG*

11

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on June 24, 2011, a true and correct copy of the foregoing REPLY CLAIM CONSTRUCTION BRIEF OF PLAINTIFF MEDIEN PATENT VERWALTUNG AG was served to all counsel of record via the Court's CM/ECF system and via electronic mail as follows:

Phoebe Anne Wilkinson, Esq.           Daniel M. Lechleiter, Esq.
**CHADBOURNE & PARKE LLP**           Richard Trevor Carter, Esq.
30 Rockefeller Plaza                  **BAKER & DANIELS LLP**
New York, NY  10112                   300 North Meridian Street, Suite 2700
(212) 408-1157                        Indianapolis, IN  46204
Fax:  (212) 541-5369                  (317) 237-0300
pwilkinson@chadbourne.com             Fax:  (317) 237-1000
                                      daniel.lechleiter@bakerd.com
                                      trevor.carter@bakerd.com

*Attorneys for Defendants Warner Bros. Entertainment, Inc. and Technicolor Inc.*

Scott J. Bornstein, Esq.
Allan A. Kassenoff, Esq.
Julie P. Bookbinder, Esq.
**GREENBERG TRAURIG, LLP**
MetLife Building
200 Park Avenue, 34th Floor
New York, NY  10166
(212) 801-9200
Fax:  (212) 801-6400
bornsteins@gtlaw.com
kassenoffa@gtlaw.com
bookbinderj@gtlaw.com

*Attorneys for Defendant Deluxe Entertainment Services Group Inc.*

                                      s/ Sean E. Jackson
                                      Sean E. Jackson