UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

Medien Patent Verwaltung AG,

                Plaintiff,

  -against-                                            No. 10 Civ. 4119 (CM)

Warner Bros. Entertainment, Inc., et al.,

                Defendants.

---------------------------------------------------------------x

## FIRST MARKMAN RULING

McMahon, J.:

      U.S. Patent 7,187,633 (the '633 Patent), dated March 6, 2007, issued for an invention consisting of a method of identifying a mechanically readable medium (a gramophone record, a magnetic tape or a celluloid film) that contains information in a continuous sequence intended for optical or acoustic reproduction. The identification method consists of "a sequence of markings" that "individualize" (identify) the medium. The sequence of markings "can be read out together with the acoustic or optical information" contained on the medium. ('633 Patent, Ex. C. to the Declaration of Sean E. Jackson, Esq., Abstract.)

      The principal purpose of placing the identifying sequence of markings on the medium is to prevent piracy, particularly of motion pictures. The markings – which will not be apparent to the person who sits in the movie theatre creating the pirated copy – will be unique to a particular print; this, apparently, can be of assistance in tracking down and apprehending the pirate.

      Anti-piracy measures were not new when the patent was awarded in 2007. Serial numbers have long been imprinted on media to identify them; and as plaintiff admits in its Markman brief, as far back as 1982, the Motion Picture Association of America (MPAA) collaborated with Eastman Kodak to develop Coded Anti-Piracy coding, or "CAP coding," which incorporated a series of faint dots or numbers into the video portion of a film print. (Plaintiff's Markman Br. at 2.) According to plaintiff, however, the advent of digital motion pictures has severely diminished the usefulness of CAP coding as a tool for deterring piracy. (Id. at 3.) The '633 patent was invented to overcome these perceived deficiencies.

      Although the Summary of Invention and the Preferred Embodiment describe an extremely broad invention that encompasses the placement of identifying markings on either digital or analog media, the actual invention as defined by the claim language is somewhat narrower. Independent Claim 1 describes a method of identifying, via a sequence of something called markings, a particular medium that contains both analog and digital information, with the

markings placed at least in the section of the medium containing the analog information, but including the possibility that the markings would be placed in the section(s) containing the digital information as well – but never in just the sections containing the digital information.

As against Defendants, Plaintiff asserts Dependent Claims 3, 4 and 7, all of which derive from Independent Claim 1, as well as Independent Claims 15 and 19 and Dependent Claims 11 and 12 (which derive from Independent Claim 8) and 20 and 22-25 (which derive from Independent Claim 19) of the '633 patent.

The parties agree that certain claim terms need to be construed for the jury. They have provided the court with agreed-upon definitions for the terms "reproduction," "individualizes the medium," and "sound track." The court will instruct the jury according to the parties' agreed-upon definitions.

Plaintiff and Deluxe disagree over the meaning of the word "markings" in the phrase "sequence of markings." WB/Technicolor does not believe this word needs to be construed separately from the phrase "sequence of markings which individualizes the medium."

Plaintiff and Deluxe disagree over the meaning of the phrase "markings being readable together with."

All parties disagree about the meaning of the phrase "sequence of markings."

Principles of Claim Construction

The claims of a patent define the invention to which the patentee is entitled the right to exclude. Philips v. AWH Corp., 415 F. 3d 1303, 1312 (Fed. Cir. 2005) (en banc). For this reason, courts are directed to "look to the words of the claims themselves . . . to define the scope of the patented invention." Vitonics Corp. v. Conceptronic, Inc., 90 F. 3d 1576, 1582 (Fed. Cir. 1996). Therefore, the "claim construction inquiry . . . begins and ends in all cases with the actual words of the claims." Renishaw PLC v. Marposs Societa'Per Azioni, 158 F. 3d 1243, 1248 (Fed. Cir. 1998).

The general rule is that claim terms are to be given their ordinary and accustomed meaning because that meaning is presumed to be the correct one. K-2 Corp. v. Salomon S.A., 191 F.3d 1356, 1362-63 (Fed. Cir. 1999). The "ordinary and customary meaning of a claim term is the meaning that the claim term would have to a person of ordinary skill in the art in question at the time of the invention. . . ." Philips, 415 F. 3d at 1313. In cases where the ordinary and customary meaning is not immediately apparent, courts look to "the words of the claims themselves, the remainder of the specification, [and] the prosecution history. . . ." Id. at 1314. This material is referred to as the intrinsic record. "The specification is always highly relevant to the claim construction analysis. Usually it is dispositive; it is the single best guide to the meaning of a disputed term." Id. at 1315 (quoting Vitronics, 90 F. 3d at 1582). Indeed, the claims "must be read in view of the specification, of which they are a part." Markman v. Westview Instruments, Inc., 52 F. 3d 967, 979 (Fed. Cir. 1995) (en banc), aff'd 517 U.S. 370 (1996).

However, it is improper to read a limitation from the specification into the claims. Comark Communications, Inc., v. Harris Corp., 156 F. 3d 1182, 1186 (Fed. Cir. 1998).

"Like the specification, the prosecution history was created by the patentee in attempting to explain and obtain the patent," Philips, 415 F. 3d at 1317. Claims may be limited by amendments or arguments made during prosecution, although any such disclaimer must evidence both "reasonable clarity and deliberateness." N. Telecom Ltd. v. Samsung Elects. Co., Ltd., 215 F. 3d 1281, 1293-95 (Fed. Cir. 2000). An ambiguous disclaimer or disavowal of claim scope will not limit a claim. Id. at 1295.

The presumption that a claim term should be given its ordinary and accustomed meaning may be overcome where a patentee has chosen to be his or her own lexicographer and uses the term in a manner other than its ordinary meaning, so long as the special definition of the term is clearly stated in the patent specification or prosecution history. Vitronics, 90 F. 3d at 1582. In such cases, the inventor's lexicography governs. Philips, 415 F. 3d at 1316.

"Construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." Renishaw, 158 F. 3d at 1250.

Application of Claim Construction Principles to the Disputed Claim Language

The first disputed claim term I will discuss is "a sequence of markings which individualizes the medium." Discussion of the entire sentence will resolve several claim disputes.

There does not appear to be any dispute that the word "sequence" means "series or set." There may be a dispute over whether a series or a set can be a set of one; frankly, it is not clear from the briefs, which are written (as Markman briefs so often are) without explaining to the court exactly why construing a particular word or phrase in a particular way will or will not alter the result in the case. The parties should clarify their positions on whether this issue (can a sequence consist of a set of one) can be resolved as a matter of intrinsic evidence, in letters of no more than two single spaced pages. Those letters are due in ten days.

The series or set is of something the patentee calls "markings." I agree that the word "markings" requires definition so that the average lay juror can understand it. I do not agree with WB/Technicolor that the term "markings" as used in the phrase "sequence of markings" means anything other than a "set or series" of whatever constitutes a marking. I also disagree with WB/Technicolor's suggestion that the word "markings" does not itself require any definition. Interestingly, WB/Technicolor does not suggest what "ordinary meaning" a "person skilled in the art" would apply to "markings;" not being a person so skilled, I have no idea what that meaning might be.

Plaintiff proposes that the word "markings" means "a change to at least one readable property of the medium." Plaintiff argues that the patentee acted as his own lexicographer, giving a particular meaning to the term "markings" by defining them throughout the specification as "a change" to "properties of the medium" or by indicating that markings are "formed" (created) by

"changing" one or more properties of the medium. And indeed, at various places, the '633 patent specification states that "the markings 14 which are formed in the area of the optical sound track 20 . . . can be interpreted as a change to the optical properties of the celluloid film" ('633 Patent, Jackson Dec. Ex. C, col 6, lines 38-42), and, "The formation of markings can include a change of magnetic, mechanical or optical properties of the medium. A simultaneous change of several of these properties of the medium is also possible. . . . In general, it is therefore useful that both the markings and the information intended for reproduction are formed by changing the same property or properties of the medium." (Id., at col. 2, lines 21-32).

Deluxe agrees that the "markings" must involve "a change to at least one readable property of the medium." (Deluxe Claim Construction Brief at 12.) Nothing in the submission of WB/Technicolor persuades me that the term "markings" does not at least encompass this agreed-upon definition. Therefore, the jury will be told that a "marking" means "a change to at least one readable property of a medium."

The more difficult question posed by the motion is whether the jurors should be told more. Deluxe argues that plaintiff's proposed definition must be expanded, to include two additional concepts: (1) the change must take the form of *readable content*, and (2) the readable content must be *added* to the medium. Deluxe's position is that a marking cannot be formed (created) by subtracting content from the medium. Plaintiff, by contrast, contends that, while a marking must be made on some "readable property" of a medium, it can consist of something other than readable content, and argues that markings can be formed (created) by subtracting content from the medium as well as by adding it.

Plaintiff argues that Deluxe is trying to add elements to the patentee's personal lexicography by insisting that any change to the readable property must consist of readable content that is added to the medium. The question is whether there is anything in the specification or the prosecution history that suggests adopting either or both of Deluxe's suggestions.

After carefully and repeatedly reviewing the patent, I am unable to reach a conclusion, from intrinsic evidence alone, about whether Deluxe's two proposed additions to the otherwise agreed-upon definition of "markings" are or are not fairly encompassed by the patent. I can understand how changing a medium by erasing content therefrom could "mark" the medium for purposes of identifying it and distinguishing it from other media – especially as Plaintiff has specifically suggested the use of binary codes, consisting of 1s and 0s (or content and non-content) as "markings." However, the language cited by Plaintiff to support its position that "markings" can be created otherwise than by adding content to the medium is at best ambiguous. For example, suggestions that not "forming" (creating) a "marking" is itself a "marking" (see, e.g., '633 Patent at col 2, lines 63-65) or that the absence of individual "markings" is itself a "marking"(see, e.g., '633 Patent at col. 2 lines 65-66) appear inherently contradictory. If the patentee had used the phrase "the absence of content" instead of "the absence of markings" in these sentences, I would find his argument that the absence of content was itself a "marking" fully supported.

Similarly, as one unskilled in the art, I have no idea whether there is any way that it is possible to change a "readable property" of a medium in an "unreadable" way, as Plaintiff argues. Someone needs to explain to me how that might work. As a matter of logic, it does not seem that the absence of content works an "unreadable" change, because the absence of content, no less than the presence of content, is "readable" as I understand the word "readable." It may be that one skilled in the art defines "readable" differently than I do.

It may be that my confusion rests on my lack of knowledge about the highly technical area under discussion. Or it may be that the parties, having read the two paragraphs that immediately precede this one, will perceive some misunderstanding on my part (such as a misunderstanding of the definition of "readable" to on skilled in the art) and will undertake jointly to correct it. However, unless the parties agree that there is something about "readability," or the difference between "markings" and "content," that I misperceive, I will need extrinsic evidence before I can decide whether either or both of the additional elements that Deluxe believes should be added to plaintiff's definition of "markings" should be included in the term's final construction. Affidavits from the patentee and/or experts shall be supplied to the court within thirty days, exchanged simultaneously; any rebuttal affidavits are due ten days later, also exchanged simultaneously.

Both Plaintiff and Deluxe agree that the "markings" permit the medium to be "individualized," which word they define as "identified."

WB/Technicolor would have me define the phrase "sequence of markings which individualizes the medium" as "an identifier who distinctive characteristics permit the identification of the medium regardless of the identifier's location on the medium." That definition is far less helpful to a lay trier of fact than explaining what a "marking" is and then telling the jury that a "sequence" of markings is a set or series of them. Furthermore, the patentee has defined his claim such that it does make a difference where the identifying markings are located on the medium – they must be located on some "readable property" of the medium, whether that be optical, mechanical or magnetic. ('633 Patent at Col. 2, lines 21-32.)

I agree with Plaintiff and WB/Technicolor that there is no need to define the phrase "markings being readable together with," because the phrase requires no special construction. Deluxe insists that the phrase must be defined so that the markings are recognized "simultaneously" (i.e., at the exact same instant) as the content on the medium that is intended for reproduction (the movie, the TV show, the recorded music). But nothing in the commonly understood meaning of the phrase "together with" requires such simultaneity, and Deluxe points to nothing in the text of the patent that compels such a result. On the contrary: As Plaintiff points out, the embodiment illustrated in Figure 3a indicates that the "markings" on the analog sound track are not "recognized" at the same time as the other sound information on the analog sound track, but instead are read out serially (not concurrently) with the sound information.

I agree with Plaintiff that Deluxe's proposal that markings must be read "in the same manner" as the content intended for reproduction is ambiguous and only confuses what seems to me quite straightforward.

The above discussion disposes of all contested issues except as noted.

Dated: January 6, 2011

_____
U.S.D.J.

BY ECF TO ALL COUNSEL