USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/7/12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

MEDIEN PATENT VERWALTUNG AG,

      Plaintiff,

  -against-                                    10 Civ. 4119 (CM)

WARNER BROS. ENTERTAINMENT, INC.,
TECHNICOLOR INC. and DELUXE
ENTERTAINMENT SERVICES GROUP INC.,

      Defendants.

---------------------------------------------------------------x

## SUPPLEMENTAL MARKMAN RULING

McMahon, J.:

      The issue that remains to be decided after my initial Markman ruling is whether the court's construction of the term "markings" — which I defined as "a change to at least one readable property of the medium" — should be supplemented by the addition of the words "in the form of readable content added to the medium." This additional language is proposed by Defendant Deluxe and is opposed by Plaintiff.

      After considering the further submissions of the parties' expert witnesses, I find as follows:

      (1)    The credentials and expertise of Howard J. Flemming, Defendants' expert, exceed those of William R. Rosenblatt, Plaintiff's expert, in the relevant art. Mr. Rosenblatt does indeed have vast and impressive expertise as a software engineer. He has considerable academic experience in the field of digital rights management, with great knowledge of the techniques of digital fingerprinting or watermarking. However, Mr. Flemming has worked specifically in the motion picture industry since 1989, concentrating in the optical storage of motion picture sound tracks on motion picture film. He led the team that developed the first digital optical sound track printed on motion picture film. He has served as a member of the Hollywood technical steering committee that planned the future of digital sound in theater, and wrote the Film Laboratory Practices book on the subject. He has received an Academy Award for his pioneering work leading to motion picture digital sound. He holds a patent for a system for photographically recording digital data and analog soundtrack, and medium having digital data and analog soundtrack recorded thereon. And he contributed to the design of the Deluxe FCT sound track anti-piracy system. In effect, while Mr. Rosenblatt has extensively studied the field covered by

1

the patent in suit — the sound coding of film prints — it can fairly be said that Mr. Flemming helped to invent the field.

(2) Mr. Rosenblatt's opinion that the court should not add the language proposed by Deluxe to its construction of "markings" depends for its force on his contention that there is some difference between the terms "content" and "information" as used in the '633 patent. I find no support in the patent itself for this argument. Mr. Rosenblatt argues that the patentee (who, significantly, did not testify) must have intended those two words to have different meanings because of the following sentence in the specification: "The analog and digital information can correspond to each other. In other words, the analog and digital information can be provided redundantly and the content can agree." Mr. Rosenblatt concedes that this is the only place in the entire patent where the word "content" appears. Furthermore, to the eye of this reader it is just as plausible that the words "information" and "content" are used synonymously in this sentence, and Mr. Flemming, based on his years of experience in the film industry with the technology in suit, testifies, credibly, that that is exactly how one skilled in the art would understand them. Furthermore, nothing in either the common understanding of the word "content" or its use in the '633 patent supports Mr. Rosenblatt's suggestion that "content" is limited to "a listener's or viewer's perception of information when it is reproduced," (Rosenblatt Decl. ¶ 17); the only place in the patent where the word "content" appears is the quoted sentence, and nothing in the quoted sentence places the word in the expert's suggested context. Indeed, even reading the sentence as, "In other words, the analog and digital information can be provided redundantly and the content [of the information] can agree." In view of the utter lack of any evidence in the patent to support Mr. Rosenblatt's strained suggestion that the patentee was acting as his own lexicographer and differentiating between "information" and "content" in this singular occasion — as well as Mr. Flemming's opinion, as one exceedingly skilled in the art, that the terms are used interchangeably in the sound coding field — I cannot accept the seemingly illogical distinction between the two terms.

(3) I found Mr. Rosenblatt's reliance on the Wheeler Publication at best confusing, because the publication by its terms appears to support Deluxe's contention that marking must be "added" to the medium. Certainly, the examples of "markings" that it discloses consist of encoded information that is "written" near the edge of the film or "printed" on substrates; something that is "written" or "printed" is necessarily added to, not removed from, the medium on which is appears. However, Mr. Flemming explains that the excerpts from the Wheeler Publication discussed by Mr. Rosenblatt were used to reject pending claims that were subsequently cancelled by the Applicants and so are not at issue in this case. I do not see how the Wheeler reference adds to Plaintiff's argument.

(4) The patent repeatedly states that "markings" are "formed" on the medium. I disagree that it would be impossible to "form" a marking by deleting something from a medium. However, it is unquestionably the case that the markings claimed in the '633 patent have to be "readable" — I do not understand the parties to disagree about that.

(5) As Mr. Flemming explains, this court previously concluded that the '633 patent relates to "a method of identifying a mechanically readable medium . . . that contains information in a continuous sequences intended for optical or acoustic reproduction." (First Markman Ruling

at 1 (ECF No. 76).) As disclosed in the patent, the presence of a marking represents a "1" in the binary code, while the absence of a marking is a "0." The pattern created by the markings and the blank spaces translates into a code that can be used to identify a particular copy of a mechanically readable medium. Markings can be added to the video or the audio portion of the medium in the same binary manner. It bears noting that the "absence of a marking" (binary "0") to which the patent refers does not indicate that something has been "deleted" from the medium, but rather that nothing has been "added" to it.

(6)     Plaintiff relies for its position on the following excerpt from the '633 patent: "In the base of a binary code, in a sequence of markings, individual markings may be deliberately formed or not formed. The binary code may therefore be determined by the presence or absence of individual markings." (Col. 2, 11.63-66.) However, after considering the matter in light of the affidavits, I am constrained to agree with Dr. Flemming that this sentence actually supports *Defendants'* position, not Plaintiff's. As discussed above, the "absence of individual markings" on the medium does not suggest that material was deleted from the medium — rather, it represents the failure to add material to the medium. Therefore, the patent's reference to the "absence of markings" does not suggest that material can be deleted from the medium in order to create a marking. Quite the contrary; it fairly implies that markings are added to the medium, and that *the sequence of markings and lack of markings* (i.e., blank spaces) creates a unique code that identifies as particular print of a film as authentic.

(7)     The conclusion that markings in the context of the '633 patent cannot consist of material that is deleted from the soundtrack is further reinforced by what the patent does disclose about the deletion of information from the medium. In order for the film projector to "read" the markings that have been placed on an analog sound track, the patent teaches that the portion of the higher quality digital soundtrack that corresponds to where the markings are located be deleted or erased from the medium. This deletion "forces" the projector to divert from the digital to the analog track and to read the analog track, where the code (in the form of a sequence of markings and absence of markings) can be read (apparently, the projector would read identical markings on the digital track as "errors" and would correct them, which would defeat the purpose of the invention). These deletions in the digital soundtrack are not "markings" under the claims of the '633 patent. They are not "markings" because they cannot be "read out." Indeed, the entire purpose of making the disclosed deletions is to cause the projector *not* to read that portion of the digital soundtrack — but rather to "deliberately prevent[]" the reading out of the digital soundtracks. These deletions are the only deletions from the medium.

(8)     Dr. Flemming's explanation of these matters (which is entirely predicated on intrinsic evidence, albeit intrinsic evidence that was not comprehensible to the court when I first reviewed it) convinces me that the markings claimed by the '633 patent must consist of content that is added to the medium; the patent does not teach markings that consist of deletions from the medium.

(9)     The court also asked whether it was possible to make a change to a readable property of a medium in an "unreadable" way. This was an inelegant way of addressing the issue discussed above — whether deletions from a medium could be "markings" under the '633 patent. Having answered that question in the negative, I agree with Dr. Flemming that nothing in the

3

'633 patent discloses the addition of "unreadable" markings, because throughout the patent the patentee insists that the sequence of markings "can be read out together with the information intended for reproduction."

(10)   Accordingly, I will define the term "markings" for the jury as "readable content added to a medium that changes at least one readable property of a medium."

Dated: March 7, 2012

                                                                          U.S.D.J.

BY ECF TO ALL COUNSEL