IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
MEDIEN PATENT VERWALTUNG AG,

                        Plaintiff,

                        Case No. 10 Civ. 4119 (CM)

                v.

WARNER BROS. ENTERTAINMENT, INC.,
TECHNICOLOR INC., and DELUXE
ENTERTAINMENT SERVICES GROUP INC.,

                        Defendants.
-----------------------------------------------------------------x

**DEFENDANT DELUXE ENTERTAINMENT SERVICES GROUP INC.'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
OF NON-INFRINGEMENT OF THE PATENT-IN-SUIT**

*NY 242,226,199v2*

TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 1

II. STATEMENT OF FACTS .................................................................................................. 1

    A. Procedural History ................................................................................................ 1

    B. The '633 Patent .................................................................................................... 3

    C. The Asserted Claims and the Court's Claim Construction ...................................... 7

    D. Deluxe's Accused Process and Products ................................................................ 8

III. ARGUMENT ...................................................................................................................... 10

    A. The Standards for Summary Judgment ................................................................ 10

    B. Deluxe Does Not Directly Infringe the '633 Patent .............................................. 11

    C. Deluxe Does Not Indirectly Infringe the '633 Patent ............................................ 14

IV. CONCLUSION .................................................................................................................. 15

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Abbott Labs. v. Sandoz, Inc.*,
    566 F.3d 1282 (Fed. Cir. 2009)……………………………………………………………12

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)………………………………………………………………………10

*Asyst Techs., Inc. v. Emtrak, Inc.*,
    402 F.3d 1188 (Fed. Cir. 2005)……………………………………………………………13

*Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*,
    853 F.2d 1557 (Fed. Cir. 1988)……………………………………………………………10

*BAE Sys. Elecs. Ltd. v. Rockwell Collins, Inc.*,
    2004 WL 1809811 (N.D. Tex. Aug. 12, 2004)………………………………………..13, 14

*Brown v. 3M*,
    265 F.3d 1349 (Fed. Cir. 2001)……………………………………………………………11

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)………………………………………………………………………10

*CVI/Beta Ventures, Inc. v. Tura LP*,
    112 F.3d 1146 (Fed. Cir. 1997)……………………………………………………………11

*Joy Techs., Inc. v. Flakt, Inc.*,
    6 F.3d 770 (Fed. Cir. 1993)……………………………………………………………14, 15

*L.B. Plastics, Inc. v. Amerimax Home Prods., Inc.*,
    499 F.3d 1303 (Fed. Cir. 2007)……………………………………………………………10

*Mas-Hamilton Group v. LaGard, Inc.*,
    156 F.3d 1206 (Fed. Cir. 1998)……………………………………………………………12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)………………………………………………………………………10

*Moore U.S.A., Inc. v. Standard Register Co.*,
    229 F.3d 1091 (Fed. Cir. 2000)……………………………………………………………13

*PC Connector Solutions LLC v. Smartdisk Corp.*,
    406 F.3d 1359 (Fed. Cir. 2005)……………………………………………………………11

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ………...……………………………………………………..8

*Phillips Petroleum Co. v. Huntsman Polymers Corp.*,
  157 F.3d 866 (Fed. Cir. 1998)…………………………………………………………………..12

*Seachange Int'l, Inc. v. C-COR, Inc.*,
  413 F.3d 1361 (Fed. Cir. 2005)…………………………………………………………………13

*Welker Bearing Co. v. PHD Inc.*,
  550 F.3d 1090 (Fed. Cir 2008)………………………………………………………………….10

**<u>Federal Statutes</u>**

  Fed. R. Civ. P. 56(a)……………………………………………………………………………..10

## I. INTRODUCTION

Plaintiff Medien Patent Verwaltung AG ("MPV") is accusing defendant Deluxe Entertainment Services Group Inc. ("Deluxe") and two other defendants of infringing U.S. Patent No. 7,187,633 (the "'633 patent"). The '633 patent, entitled "Marking of a Data Medium Material for Information Intended for Reproduction," purports to teach a system and method for identifying a particular physical embodiment of a medium, such as film, by the addition of an individualized sequence of "markings."

In its March 7, 2012 Supplemental Markman Ruling (at 3), the Court expressly held that "the markings claimed by the '633 patent must consist of content that is added to the medium; the patent does not teach markings that consist of deletions from the medium." As demonstrated below, Deluxe's accused anti-piracy sound coding process deletes (rather than adds) content. Accordingly, Deluxe respectfully requests that this Court enter summary judgment of non-infringement by Deluxe of the '633 patent.

## II. STATEMENT OF FACTS

### A. Procedural History

On May 19, 2010, MPV filed its Complaint and Demand for Jury Trial ("Complaint"), accusing Deluxe of infringing claims 3, 4, 7, 11, 12, 15, 19, 20 and 22-25 of the '633 patent. (Statement of Undisputed Facts ("SUF") ¶ 1). Specifically, the Complaint alleged that "[s]ince the issuance of the '633 Patent, Deluxe has manufactured, sold, and distributed thousands of motion picture film prints in the United States incorporating the anti-piracy invention of the '633 Patent." (SUF ¶ 2). Thus, according to MPV, Deluxe has directly and indirectly infringed the '633 patent. (SUF ¶ 3). Two days later, on May 21, 2010, MPV served an Amended Complaint which included virtually identical allegations. (SUF ¶ 4).

On March 18, 2011, the Court conducted an initial pretrial conference. (SUF ¶ 5). At the conference, the Court ordered the parties to submit a list of disputed claim terms and stayed discovery in the case pending the Court's Markman decision.[1] (*Id.*) On April 18, 2011, the parties submitted a Joint Claim Construction Statement (Dkt No. 68), identifying the claim terms in dispute and each party's proposed constructions thereof. (SUF ¶ 6). On April 19, 2011, the Court issued its Markman Briefing Schedule (Phase I) (Dkt No. 69) and instructed the parties to limit their briefing to the intrinsic evidence. (SUF ¶ 7).

On January 6, 2012, the Court issued its First Markman Ruling (Dkt No. 76). (SUF ¶ 8). Although the Court ruled on two of the three terms in dispute, the Court sought extrinsic evidence (in the form of affidavits from the patentee and/or expert witnesses) regarding the construction of the term "markings." Accordingly, on February 6, 2012, MPV submitted the Declaration of William R. Rosenblatt and Deluxe submitted the Affidavit of Howard J. Flemming in an effort to assist the Court.[2] (SUF ¶ 9). Ten days later, on February 16, 2012, both experts submitted rebuttal reports. (SUF ¶ 10). On March 7, 2012, the Court issued its Supplemental Markman Ruling, agreeing with Deluxe's expert Mr. Flemming. (SUF ¶ 11).

Despite the termination of the stay due to the Court's First Markman Ruling on January 6, 2012 and its Supplemental Markman Ruling on March 7, 2012, MPV took no action to pursue the instant action against Deluxe until its July 6, 2012 request for a Pretrial Conference.

---

[1] At the March 18, 2011 initial pretrial conference, the Court was advised of a related ongoing patent litigation brought by MPV against defendant Warner Bros. Entertainment, Inc. in Germany involving foreign counterpart patents to the '633 patent. Notwithstanding the stay entered in the instant case, the Court directed MPV's counsel to produce all papers filed with the German Court in the German litigation.

[2] In the Joint Claim Construction Statement, defendants Warner Bros. Entertainment, Inc. and Technicolor Inc. suggested that the term "markings" did not need to be defined. (Dkt No. 68). Accordingly, neither Warner Bros. Entertainment, Inc. nor Technicolor Inc. submitted an expert affidavit as requested by the Court.

B.     The '633 Patent

The '633 patent purports to describe a method to "individualize" certain types of machine-readable media, such as the celluloid film usable with motion pictures, by adding a sequence of "markings" to the sound information and/or picture (image) information stored on the media. (Col. 1, ll. 8-9, 50-51, 64-67; col. 2, ll. 1-3). As explained further below (*see infra* at Section II.C), the claimed "markings" "cannot consist of material that is deleted from the soundtrack." (Supp'l Markman Ruling, at 3). To the contrary, "the markings claimed by the '633 patent must consist of content that is added to the medium; the patent does not teach markings that consist of deletions from the medium." (*Id.*)

The '633 patent disclosure recognized that similar methods of individualizing media already existed in the prior art. For example, the '633 patent explains that "a serial number [can be] applied to a surface of the medium using suitable printing or engraving techniques." (Col. 1, ll. 30-32). Similarly, MPV acknowledged that "picture" marking -- in contrast to the audio (or sound) marking embodiments of the '633 patent -- existed at least as early as 1982, when the Motion Picture Association of American collaborated with Eastman Kodak to develop "Coded Anti-Piracy (CAP) coding." (MPV Opening Claim Construction Br., at 2). As explained by MPV, "[a] CAP code is a 'picture' coding scheme [for uniquely identifying film prints using a unique serial number assigned to a particular film print] that uses a series of faint dots or numbers incorporated into the picture (video) portion of a film print." (*Id.*)

The first embodiment of the '633 patent is a method of adding a sequence of "markings" to the picture (image) information stored on certain types of machine-readable media to uniquely identify it. This embodiment is illustrated in Figures 3a and 3b (reproduced below) in connection with film media and involves the formation of a sequence of bars (Fig. 3a) or a grid

pattern (Fig. 3b) on a section of the image stored on the film media. (*See* col. 6, line 65 - col. 7, line 1). The use of the grid pattern (24), as shown below in Fig. 3b, to uniquely identify a film print is almost identical to the admitted CAP coding prior art implementation of using a series of dots incorporated into the picture (video) portion of a film print.



In certain embodiments of the '633 patent, the film medium contains both digital and analog soundtracks. (Col. 7, ll. 32-44). In such embodiments, the claimed markings are formed in the analog (or optical) soundtrack of the film, where according to the '633 patent's specification, audio marking -- like picture marking -- "makes it possible to link the markings which are provided to identify the medium (whether an original or a copy thereof) uniquely to the information intended for reproduction." (Col. 1, ll. 56-59). The claimed markings are formed in a specific pattern (to form a binary code, for example), and therefore individualize the medium, much like a serial number. (*See* col. 5, ll. 37-44).

Fig. 3a of the '633 patent (reproduced above) shows the claimed markings (14) located in the optical (i.e., analog) sound track (20) of a film. (*See* col. 6, ll. 38-39). The markings (14) can be formed as a series of bar codes similar to the markings (24) that can be placed in the picture

(image) area.  In both instances, the presence of a marking (indicated by a parallel bar) represents a 1 in binary code, while the absence of a marking (indicated by a blank space) represents a 0.[3] As the film is played by the projector, the sequence of markings is read out together with the analog sound track.

Although Figure 3a only shows an analog sound track, celluloid film typically contains at least one digital sound track as well.  As explained by MPV in its Opening Claim Construction Brief, "[i]ncorporating an anti-piracy code into the digital sound track is not feasible, however, since digital error correction technology used in the projection equipment would recognize such coding as an error or imperfection and will automatically correct and eliminate the 'error,' hence eliminating the coding."  (MPV Opening Claim Construction Br., at 4).  Accordingly, as shown in Figure 3a, the claimed markings must be formed in the analog sound track.  But, the film projector typically plays the digital sound track by default as it is of higher quality than the analog track.  "The analog sound track 20 is read out only if a read-out device (e.g. a film projector) does not allow the [digital sound] tracks 30, 32, 40 to be read out, or if the [digital sound] tracks 30, 32, 40 are dirty, defective or otherwise unreadable."  (Col. 7, ll. 57-60).  The '633 patent, therefore, instructs one to practice the alleged invention by deleting or erasing the portion of the digital sound track that corresponds to the location of the markings on the analog track in order to "force" the projector to read the analog track.  (*See* col. 8, ll. 17-21 ("Reading out one or both of the digital sound tracks 30, 32 as well as the time code track 40 is therefore deliberately prevented, to cause the compulsory reading out (and compulsory reproduction) of the marking sequence 14.")).  Figure 4 (reproduced below) illustrates this aspect of the '633 patent.

---

[3] Thus, Figure 3a's pattern of 3 markings (i.e., parallel bars), one blank space, one marking, one blank space, and one marking translates into "1110101" in binary code.



Fig. 4

Specifically, the portions of the digital sound tracks (30, 32) corresponding to the markings (14) in the analog sound track (20) have been erased (34, 36, 38). Accordingly, when the film projector encounters the deleted portion (34, 36, 38) of the digital sound track, those portions of the digital sound tracks (30, 32) cannot be read out and the film projector will be forced to read the corresponding analog portion (20) which contains the sound markings (14). In other words,

> [t]he effect of the absence or illegibility of digital sound information or time code information at the locations 34, 36, 38 and 42 is that the read-out device falls back on the optical sound track 20 at the locations 34, 36, 38 and 42 and reads out the analog information which is formed there. Simultaneously with the

>analog information, the sequence of markings 14 (as described above) is also read out.

(Col. 8, ll. 11-17).

### C. The Asserted Claims and the Court's Claim Construction

MPV has accused Deluxe of infringing claims 3, 4, 7, 11, 12, 15, 19, 20 and 22-25 of the '633 patent. (SUF ¶ 1). Claims 3, 4, 7, 19, 20 and 22-25 each claim a method of marking a machine-readable medium while claims 11, 12 and 15 claim the medium incorporating said markings. The term "markings," which appears either directly or indirectly in each asserted claim,[4] is the critical claim limitation for purposes of the instant motion. In its opening Markman brief, MPV argued that the claimed "markings" are "a change to at least one readable property of the medium." (MPV Opening Claim Construction Br., at 9). In its Phase One Claim Construction Brief (at 12), Deluxe explained that MPV's proposed construction was incomplete as it would also improperly cover *deletions* of sound content from the medium. Accordingly, Deluxe argued that the claimed "markings" must also be "readable content added to the medium." (*Id.*) In its First Markman Ruling, the Court succinctly summarized the parties' dispute as follows:

>Deluxe argues that plaintiff's proposed definition must be expanded, to include two additional concepts: (1) the change must take the form of *readable content*, and (2) the readable content must be *added* to the medium. Deluxe's position is that a marking cannot be formed (created) by subtracting content from the medium. Plaintiff, by contrast contends that, while a marking must be made on some "readable property" of a medium, it can consist of something other than readable content, and argues that markings can be formed (created) by subtracting content from the medium as well as by adding it.

---

[4] The claim term "markings" appears in asserted claims 3, 7, 11, 15, 19, 20 and 22. The remaining asserted claims -- 4, 12 & 23-25 -- each depend from a claim that contains the "markings" term.

(First Markman Ruling, at 4 (emphasis in original)).  Although the Court clearly understood the dispute, it requested extrinsic evidence, as permitted by controlling case law, in the form of affidavits from the patentee and/or expert witnesses to assist it in making a claim construction determination.  (*Id.* at 5; *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (*en banc*) ("Although we have emphasized the importance of intrinsic evidence in claim construction, we have also authorized district courts to rely on extrinsic evidence, which 'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.'") (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995))).

As set forth above, MPV and Deluxe each submitted expert affidavits and rebuttal reports.  (SUF ¶¶ 9-10).  On March 7, 2012, the Court issued its Supplemental Markman Ruling, expressly adopting both of Deluxe's proposed additions.  Specifically, the Court construed the claimed "markings" as "readable content added to a medium that changes at least one readable property of a medium."  (SUF ¶ 12).  The Court further explained that the patent-in-suit's markings "cannot consist of material that is deleted from the soundtrack."  (*Id.*)  To the contrary, "the markings claimed by the '633 patent *must consist of content that is added to the medium*; the patent does not teach markings that consist of deletions from the medium."  (*Id.* (emphasis added)).

        D.    **Deluxe's Accused Process and Products**

Deluxe, through its wholly owned subsidiary Deluxe Laboratories, Inc. ("Deluxe Labs"), provides various services to the entertainment industry, including services related to the processing and printing of film for theatrical release.  (SUF ¶¶ 13, 14).  Deluxe Labs offers its film processing customers the option to have their films printed with "FCT Sound."  (SUF ¶

15).[5]  The FCT Sound process is performed during the film printing process as follows:  Specific areas of the film are exposed to a light emitting diode (LED) in order to *delete* portions of the analog soundtrack.  (SUF ¶ 17).  These deletions, also referred to as mutes or micro-second cancellations, result in a unique five digit code.  (*Id.*)  The code pattern provides the unique print number and destination.  (*Id.*)  Importantly, these codes are hidden in sound effects so that they are not noticeable to the audience.  (*Id.*)  The two pictures below are portions of film medium that have undergone Deluxe's FCT Sound process.  (SUF ¶ 19).  Specifically, the analog sound track, indicated by the ◀, appears below the "sprocket" holes and above the image information.  (SUF ¶ 20).  The white portion of the sound track constitutes the sound information.  (*Id.*)  The filled-in blue ovals are the result of the film having undergone the Deluxe FCT Sound process.  (*Id.*)  Specifically, the portion of the analog sound track where the blue ovals appear has been exposed to a light emitting diode (LED), thus *deleting* the sound content that had previously been located at that area.  (SUF ¶ 21).



---

[5] FCT stands for Forensic Coding Technology.  (SUF ¶ 16).



### III. ARGUMENT

#### A. The Standards for Summary Judgment

Summary judgment in a patent case -- like any other case -- is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1561 (Fed. Cir. 1988). On a motion for summary judgment, the moving party bears the initial burden of showing that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When that prima facie showing has been made, the burden shifts to the non-moving party who must demonstrate why summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986). This burden is not sustained by a scintilla of evidence and there must be more than a metaphysical doubt. *See id.* at 252; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Courts frequently grant summary judgment of non-infringement. *See, e.g., Welker Bearing Co. v. PHD Inc.*, 550 F.3d 1090, 1094-1100 (Fed. Cir. 2008) (affirming summary judgment that two different patents not infringed); *L.B. Plastics, Inc. v. Amerimax Home Prods., Inc.*, 499 F.3d 1303, 1308-09 (Fed. Cir. 2007) (affirming summary judgment of non-

infringement); *PC Connector Solutions LLC v. Smartdisk Corp.*, 406 F.3d 1359, 1364-65 (Fed. Cir. 2005) (same). Granting summary judgment on non-infringement grounds is consonant with the purpose of summary judgment, which the Federal Circuit has noted is "not to deprive a litigant of a trial, but to avoid an unnecessary trial when there is only one reasonably possible outcome." *Brown v. 3M*, 265 F.3d 1349, 1351 (Fed. Cir. 2001) (citing *Anderson*, 477 U.S. at 250).

### B. Deluxe Does Not Directly Infringe the '633 Patent

"In order for there to be infringement, each and every limitation set forth in a patent claim must be found in the accused product, either literally or under the doctrine of equivalents." *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1161 (Fed. Cir. 1997). As set forth above, each asserted claim of the '633 patent requires "markings." Further, the Court construed the claimed "markings" as "readable content added to a medium that changes at least one readable property of a medium." (Supp'l Markman Ruling, at 4). In order to be perfectly clear as to what can and what cannot constitute the claimed "markings," the Court further explained that "the markings claimed by the '633 patent *must consist of content that is added to the medium*; the patent does not teach markings that consist of deletions from the medium." (*Id.* at 3 (emphasis added); *see also id.* ("markings in the context of the '633 patent cannot consist of material that is deleted from the soundtrack.")). Because Deluxe's accused sound coding process involves the deletion of content from the medium and *not* "readable content *added* to a medium," Deluxe's process does not meet the "markings" claim term. (*Id.* at 4; *see also* SUF ¶¶ 17-21). Deluxe's film product, which is manufactured via its accused process, also does not meet the "markings" limitation for the identical reason. Accordingly, Deluxe does not literally infringe the '633 patent, and the Court should grant summary judgment of no literal infringement. *See Mas-*

*Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998) ("If even one limitation is missing or not met as claimed, there is no literal infringement.").

Deluxe's accused process and products also do not infringe the '633 patent under the doctrine of equivalents. The doctrine of equivalents considers whether the "accused product or process performs substantially the same function, in substantially the same way, to achieve substantially the same result, as disclosed in the claim." *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1296 (Fed. Cir. 2009) (affirming summary judgment of non-infringement literally and under the doctrine of equivalents). Under the doctrine of equivalents, the infringement analysis "proceeds element-by-element; a generalized showing of equivalency between the claim as a whole and the allegedly infringing product or process is not sufficient to show infringement." *Id.* at 1296. Thus, the mere fact that the accused Deluxe process and products provide for individualization is insufficient on its own to show equivalence. Rather, MPV must make a specific showing that Deluxe's accused process and products meet the "markings" claim limitation by equivalence.

It is well-settled that an equivalency analysis involves a comparison of the accused process or device to the properly construed claim term. *See, e.g., Phillips Petroleum Co. v. Huntsman Polymers Corp.*, 157 F.3d 866, 877 (Fed. Cir. 1998) (affirming summary judgment of non-infringement literally and under the doctrine of equivalents because "[t]he accused products lack an appreciable quantity of block copolymer molecules, a necessary condition for a product to be considered a 'block copolymer' as the term is used in the claims"). Here, there can be no equivalence between Deluxe's accused process or products -- which involve content *deleted* from the medium -- and the claimed "markings," which this Court has construed to mean "readable content *added* to a medium." In fact, "[t]he Federal Circuit Court of Appeals has held

that the doctrine of equivalents cannot be used to find that the antithesis of a claimed element is insubstantially different from the claimed element itself." *BAE Sys. Elecs. Ltd. v. Rockwell Collins, Inc.*, 2004 WL 1809811, at *5 (N.D. Tex. Aug. 12, 2004) (citing *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091 (Fed. Cir. 2000)).

In *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1106 (Fed. Cir. 2000), the Federal Circuit rejected the plaintiff's argument that the defendant infringed, under the doctrine of equivalents, a patent that claimed an envelope with an adhesive strip "extending the *majority* of the lengths" of the longitudinal margins when the accused envelope's strip only extended a *minority* of the length. According to the *Moore* Court, "it would defy logic to conclude that a minority -- the very antithesis of a majority -- could be insubstantially different from a claim limitation requiring a majority, and no reasonable juror could find otherwise" *Id.* at 1106; *see also Asyst Techs., Inc. v. Emtrak, Inc.*, 402 F.3d 1188, 1195 (Fed. Cir. 2005) (affirming the district court's grant of summary judgment of non-infringement because "an unmounted microcomputer means cannot be equivalent to a mounted one"); *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1378 (Fed. Cir. 2005) (refusing to find a computer network connected via *indirect* interconnections as equivalent to the claimed network which must be connected via *direct* interconnections). In short, a code that is created by *deleting* content is not equivalent to the claimed "marking" that are created by *adding* content.

The Northern District of Texas's *BAE* decision is directly on point. In *BAE*, the plaintiff accused the defendants of infringing a patent related to a head up display ("HUD") for an aircraft cockpit. 2004 WL 1809811, at *1. A HUD consists of two parts: "(1) a projector, which takes the data of interest from some sort of luminous data source and projects it toward a viewing surface, and (2) the viewing surface itself, known as a 'combiner' because it allows the pilot to

view the combination of the projected data and the sky in front of the pilot." *Id.* Claim 1 requires, in pertinent part, "[a]n optical projector comprising a luminous data source and *means for projecting and collimating light* from the data source . . . ." *Id.* at *2 (emphasis added). In its Markman Order, the *BAE* Court determined that the patent-in-suit "claims an optical projector which fully collimates the light *before* the light reaches the combiner." *Id.* at *3 (emphasis added). Because the accused products collimate the light *after* the light reaches the combiner, the *BAE* Court held that there was no literal infringement. *See id.* Further, the *BAE* Court held that there was no infringement under the doctrine of equivalents: "The accused systems include optical projectors which emit uncollimated light at a combiner, which then collimates the light. *An optical projector which does not collimate light is substantially different from an optical projector which does collimate light, and no reasonable juror could find otherwise.*" *Id.* at *5 (emphasis added). In short, the "Court disagrees with the [plaintiff's] proposition that using an optical projector which *does not* collimate light is an insubstantial change from an optical projector which *does* collimate light." *Id.* (emphasis added). Similarly, Deluxe's sound deletions are not an "insubstantial change" from the claimed "markings," which the Court construed as "readable content added to the medium." Accordingly, as in *BAE*, the Court should grant Deluxe's motion for summary judgment of non-infringement under the doctrine of equivalents.

    **C.**    **Deluxe Does Not Indirectly Infringe the '633 Patent**

MPV has also accused Deluxe of inducing infringement of and/or contributorily infringing the '633 patent. (Complaint, ¶ 39; Amended Complaint, ¶ 39). It is well-settled that, to indirectly infringe a patent, whether by inducing another's infringement or by contributing to another's infringement, there must be some act of direct infringement by a third party. *See Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993) ("Liability for either active

inducement of infringement or for contributory infringement is dependent upon the existence of direct infringement."). As demonstrated above (*see supra* at Section III.B), the accused Deluxe process and products do not meet the "markings" claim limitation, either literally or under the doctrine of equivalents, and, thus, do not directly infringe any of the asserted claims of the '633 patent. Accordingly, because there is no direct infringer, Deluxe cannot be liable for indirect infringement. *See Joy Techs., Inc.*, 6 F.3d at 774.

## IV. CONCLUSION

For all of the foregoing reasons, Deluxe respectfully requests that the Court grant summary judgment of non-infringement of the '633 patent.

Dated: August 24, 2012

Respectfully submitted,

By: /s/ Allan A. Kassenoff

Scott J. Bornstein
E-mail: bornsteins@gtlaw.com
Allan A. Kassenoff
E-mail: kassenoffa@gtlaw.com
Julie P. Bookbinder
E-mail: bookbinderj@gtlaw.com
GREENBERG TRAURIG, LLP
MetLife Building
200 Park Avenue
New York, New York 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400

**COUNSEL FOR DELUXE
ENTERTAINMENT SERVICES
GROUP INC.**

## **CERTIFICATE OF SERVICE**

    I hereby certify that on August 24, 2012, the foregoing was served upon all counsel of record via electronic service.

                                                    /s/  Allan A. Kassenoff
                                                       Allan A. Kassenoff