IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

MEDIEN PATENT VERWALTUNG AG,

Plaintiff,

v.

Case No. 10 Civ. 4119 (CM)(GWG)

WARNER BROS. ENTERTAINMENT, INC., TECHNICOLOR INC., and DELUXE ENTERTAINMENT SERVICES GROUP INC.,

Defendants.

-----------------------------------------------------------------x

**DEFENDANT DELUXE ENTERTAINMENT SERVICES GROUP INC.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE PATENT-IN-SUIT AND IN OPPOSITION TO PLAINTIFF MPV'S CROSS-MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT**

TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. MPV's Improper Attempt at Rearguing Claim Construction .......... 2

B. Deluxe's Accused Process and Products Involve The Deletion of Sound Content .......... 4

C. MPV's Argument that Deluxe's FCT Sound Process Adds Content Is Factually Incorrect .......... 7

D. MPV's Remaining Arguments Lack Any Merit .......... 11

E. MPV's Cross-Motion Should Be Denied For the Same Reason that Deluxe's Motion Should be Granted .......... 12

III. CONCLUSION .......... 13

TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Biagro W. Sales, Inc. v. Grow More, Inc.*,
423 F.3d 1296 (Fed. Cir. 2005)……………………………………………………………3

*CVI/Beta Ventures, Inc. v. Tura LP*,
112 F.3d 1146 (Fed. Cir. 1997)……………………………………………………………12

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
575 F.3d 1312 (Fed. Cir. 2009)……………………………………………………………3

*Joy Techs., Inc. v. Flakt, Inc.*,
6 F.3d 770 (Fed. Cir. 1993)……………………………………………………………10

*Mas-Hamilton Group v. LaGard, Inc.*,
156 F.3d 1206 (Fed. Cir. 1998)……………………………………………………………10

## I. INTRODUCTION

Defendant Deluxe Entertainment Services Group Inc. ("Deluxe") respectfully submits this Reply Memorandum Of Law In Further Support Of Its Motion For Summary Judgment Of Non-Infringement Of The Patent-In-Suit and In Opposition To Plaintiff MPV's Cross-Motion For Summary Judgment Of Infringement. In filing its cross-motion for summary judgment of infringement ("Cross-Motion"), MPV agrees that there are no genuine issues of material fact and summary judgment is appropriate. (Cross-Motion at 9-10). The sole dispute between the parties is whether or not Deluxe's accused FCT Sound process meets the "markings" claim limitation, and, thus, who is entitled to summary judgment. (*Id.* at 4).

Apparently recognizing that it cannot demonstrate that Deluxe infringes U.S. Patent No. 7,187,633 (the "'633 patent") under the Court's Supplemental Markman Ruling, MPV spends a large portion of its brief trying to reargue the construction of the claim term "markings." Not liking the Court's claim construction of this key limitation, MPV argues in its Cross-Motion (at 1) that "[t]he Court's construction of the term 'markings' does not limit in any way the nature of the 'readable content' that must be added to the medium" -- a position explicitly rejected by the Court in its Supplemental Markman Ruling. MPV's improper tactic is not all that surprising since the Court expressly held that "the markings claimed by the '633 patent must consist of content that is added to the medium; the patent does not teach markings that consist of deletions from the medium." (March 7, 2012 Supplemental Markman Ruling, at 3). And, as demonstrated in its Memorandum Of Law In Support Of Its Motion For Summary Judgment Of Non-Infringement Of The Patent-In-Suit ("Moving Brief") and further below, Deluxe's accused FCT Sound process deletes (rather than adds) content. Accordingly, Deluxe respectfully requests that this Court enter summary judgment of non-infringement by Deluxe of the '633 patent and deny MPV's cross-motion for summary judgment of infringement.

## II. ARGUMENT

### A. MPV's Improper Attempt at Rearguing Claim Construction

As set forth in Deluxe's Moving Brief (at 7), MPV argued during the Markman process that the claimed "markings" are "a change to at least one readable property of the medium." (MPV Opening Claim Construction Br., at 9). In its Phase One Claim Construction Brief (at 12), Deluxe explained that MPV's proposed construction was incomplete as it would also improperly cover *deletions* of sound content from the medium. Accordingly, Deluxe argued that the claimed "markings" must also be "readable content added to the medium." (*Id.*) In its First Markman Ruling, the Court succinctly summarized the parties' dispute as follows:

> Deluxe argues that plaintiff's proposed definition must be expanded, to include two additional concepts: (1) the change must take the form of *readable content*, and (2) the readable content must be *added* to the medium. Deluxe's position is that a marking cannot be formed (created) by subtracting content from the medium. Plaintiff, by contrast, contends that, while a marking must be made on some "readable property" of a medium, it can consist of something other than readable content, and argues that markings can be formed (created) by subtracting content from the medium as well as by adding it.

(First Markman Ruling, at 4 (emphasis in original)).

After the parties filed their respective expert submissions, the Court issued its Supplemental Markman Ruling, expressly adopting both of Deluxe's proposed additions. Specifically, the Court construed the claimed "markings" as "readable content added to a medium that changes at least one readable property of a medium." (Statement of Undisputed Facts ("SUF") ¶ 12). The Court further explained that the patent-in-suit's markings "cannot consist of material that is deleted from the soundtrack." (*Id.*) To the contrary, "the markings claimed by the '633 patent *must consist of content that is added to the medium*; the patent does not teach markings that consist of deletions from the medium." (*Id.* (emphasis added)).

Rather than applying the Court's claim construction in its Cross-Motion -- which would be fatal to its infringement allegations -- MPV simply reiterates the same arguments it had previously advanced, ignoring the fact that the Court's construction now governs. *See, e.g., Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009) ("Once a district court has construed the relevant claim terms, and unless altered by the district court, then that legal determination governs . . . ."). For instance, MPV argues that "[t]he Court's construction of the term 'markings' *does not limit in any way* the nature of the 'readable content' that must be added to the medium, so the addition of blue ovals to the medium that are read and later interpreted by sound reproduction equipment as a 'mute' falls squarely within the Court's construction." (Cross-Motion at 1 (emphasis added)). This clear misinterpretation flies in the face of the Court's construction, which expressly limited the definition of "markings" insofar as they "cannot consist of material that is deleted from the soundtrack." (SUF ¶ 12). MPV similarly argues that "to find that Deluxe's sound coding process does not infringe the '633 patent would necessarily also exclude the preferred embodiment from the scope of the '633 patent claims. This would run contrary to well established rules of claim interpretation." (Cross-Motion at 14-15; *see also id.* at 13 ("The Court's construction of 'markings' clearly reads on the preferred embodiment disclosed in Figure 4 of the '633 patent. If it did not, the claim construction would be highly suspect.")). Again, MPV's transparent attempt to reargue its previously rejected claim construction position is demonstrated by MPV's reliance on claim construction maxims and is inappropriate. *See, e.g., Biagro W. Sales, Inc. v. Grow More, Inc.*, 423 F.3d 1296, 1307 (Fed. Cir. 2005) (rejecting patentee's reargument of a previously-denied claim construction argument and affirming non-infringement on cross-motion for summary judgment).

**B. Deluxe's Accused Process and Products Involve The Deletion of Sound Content**

Try as it might, MPV cannot change the plain and simple fact that Deluxe's accused FCT Sound process involves the deletion of sound content from the film medium. (Moving Brief at 8-10). A brief overview of how the analog sound track is added to the film medium is useful to better understand Deluxe's FCT Sound process as well as the infirmities of MPV's claim of infringement. Sound content is typically printed on raw film stock by exposing the stock to an optical light source. (Affidavit Of Howard J. Flemming In Support Of Defendant Deluxe's Motion For Summary Judgment Of Non-Infringement Of The Patent-In-Suit And In Opposition To Plaintiff MPV's Cross-Motion For Summary Judgment Of Infringement, September 21, 2012 ("Flemming Aff."), at ¶ 14). Specifically, the light shines through a sound negative to the raw film stock (now a positive) as both pieces of film pass over the light. (*Id.*) The black lines on the negative block the light from shining onto the raw film stock, leaving two irregular transparent lines[1] on the film medium. (*Id.*) As indicated below, the analog sound track is formed in the area below the "sprocket" holes and above the picture information. (SUF ¶ 20; Cross-Motion at 6). Although the analog sound track is technically clear (i.e., transparent), when photographed, it appears to have the color of the background of the photo -- often white. (SUF ¶ 20; Flemming Aff., ¶ 15).

[1] The widths of the irregular transparent lines depend on the frequency of the sound content. (Flemming Aff., ¶ 15).




After the analog sound track is added to the film medium,[2] Deluxe performs its FCT Sound process as follows: Specific areas of the film are exposed to a light emitting diode ("LED") in order to *delete* portions of the analog sound track. (SUF ¶ 17). These deletions are referred to by Deluxe as mutes or micro-second cancellations. (*Id.*) The picture below is a portion of film medium that has undergone Deluxe's FCT Sound process. (SUF ¶ 19). The sound content for the analog sound track is comprised of the white portion of the sound track -- i.e., the irregular transparent lines referred to above. (SUF ¶ 20). When the blue ovals are formed via Deluxe's FCT Sound process, the white portion is removed, resulting in a lack of sound content. (Decl. of Julie P. Bookbinder in Supp. of Deluxe's Reply in Further Supp. of its Mot. For Summ. J. of Non-Infringement of the Patent-in-Suit and in Opp'n to Pl. MPV's Cross-

---

[2] Whether the FCT Sound process is performed before or after the analog soundtrack is added to the film medium is immaterial -- the result is the same. (Bookbinder Decl., at Ex. A (Wary Depo. Tr., at 64:5-11 & 72:7-15)). Specifically, when the blue ovals are formed beforehand, the film stock is pre-treated by exposing certain designated areas to the LED light. (*Id.* at 72:11-13). Once the blue ovals are formed on the film stock (i.e., the stock is exposed), they cannot be overwritten and, thus, they prevent any sound content from appearing in those locations. (*Id.* at 64:5-11) Accordingly, this alternative timing for applying the FCT Sound method likewise results in no sound content being present in the locations of the blue ovals. (*Id.* at 66:4-11). Regardless of whether the FCT Sound process is performed before or after the analog sound track is printed, it does not involve the addition of content to the film medium.

Mot. for Summ. J. of Infringement, dated Sept. 21, 2012 ("Bookbinder Decl."), at Ex. A (Tr. of the Dep. of Joseph Wary, dated Sept. 5, 2012 ("Wary Depo. Tr."), at 66:24-67:5). In other words, the portion of the analog sound track where the blue ovals appear has been exposed to the LED, which *deleted* the sound content that had previously been located at that area. (SUF ¶ 21; Cross-Motion at 7).




When the film medium is played by the projection equipment, an "exciter lamp" uses a lens and slit aperture to focus the light on the analog sound track of the film. (Flemming Aff., ¶ 16). The light passing through the transparent lines of the sound track on the film shines on a photocell. (*Id.*) The photocell converts the light passing through the film medium to an electrical current. (*Id.* at ¶ 17). The more light that shines through the film to the photocell -- which is a function of the width of the irregular transparent lines -- the stronger the electrical current. (*Id.*) The electrical current then passes from the photocell to an amplifier and, ultimately, to speakers which produce audible sound. (*Id.*) If there is a portion of the sound track that does not have irregular transparent lines to allow light to pass to the photocell, i.e. there is no white portion that is visible, no sound is produced by the sound track.[3] (*Id.* at ¶ 18;

[3] It is possible, however, that some sound will be produced as a result of electronic "noise" from the projection equipment. (Flemming Aff., ¶ 22). However, that "noise" is independent of -- and unrelated to -- the film's sound track. (*Id.* at ¶ 18).

Bookbinder Decl., at Ex. A (Wary Depo. Tr., at 66:24-67:5)). Because no white portion is visible at the locations of the blue ovals, no sound is produced when the projection equipment encounters that portion of the analog sound track.

### C. MPV's Argument that Deluxe's FCT Sound Process Adds Content Is Factually Incorrect

Ignoring the undisputed facts set forth above, MPV argues that "Deluxe's film sound coding process adds readable content to the analog sound track of a film print in the form of blue ovals." (Cross-Motion at 10). In reality, however, Deluxe's accused FCT Sound process involves the formation of mutes which *remove* the sound content that had previously existed at that location. (SUF ¶ 21; Flemming Aff., ¶¶ 25-28 & 30). Thus, as explained by both of Deluxe's affiants, Mr. Joseph Wary and Mr. Howard Flemming,[4] whether the blue ovals are termed as mutes or as deletions, their inclusion on the film medium results in sound being removed. (SUF ¶ 21; Flemming Aff., ¶¶ 25-28 & 30; Bookbinder Decl., at Ex. A (Wary Depo. Tr., at 39:3) ("Mute is the absence of sound.")). Relying on the declaration of Mr. Gerhard Lehmann, the alleged inventor of the '633 patent, MPV argues that "the blue ovals do not result in a muting of the reproduced sound. [Rather,] the reading of the blue ovals results in an altered low frequency sound signal that increases the volume of the reproduced sound." (Cross-Motion at 12, relying on Lehmann Decl. at ¶ 18 and Exhibit 3 thereto). Mr. Lehmann bases this argument on his analysis of a purported "sound spectograph" of a portion of the film print "Ice Age 4," which has undergone Deluxe's FCT Sound process. (Lehmann Decl., ¶¶ 15-18).

---

[4] The Court may recall that Mr. Flemming submitted two affidavits, dated February 6, 2012 and February 16, 2012, in support of Deluxe's claim construction positions in this case. (Dkt. Nos. 81 & 83). After recognizing Mr. Flemming's expertise based upon his 20 plus years of experience in the motion picture industry, the Court opined that "it can fairly be said that Mr. Flemming helped to invent the field [of the patent-in-suit.]" (Supplemental Markman Ruling, at 1-2).

As explained by Mr. Flemming, Mr. Lehmann's declaration contains several errors. As an initial matter, image "B" on Exhibit 3 to the Lehmann Declaration is not a "sound spectrograph." (Flemming Aff., ¶ 19). Rather, it is a waveform printed from an oscilloscope. (*Id.*) Moreover, Mr. Lehmann incorrectly states that "[t]he red line running across the center of each spectrograph represents silence, and any movement either upward or downward from the red line represent an increase in the volume of sound." (*Id.* at ¶ 21). To the contrary, the red line indicates the theoretical level of absolute zero, i.e. *no* electronic activity detected by the oscilloscope. (*Id.* at ¶ 22). Because film projection equipment will have inherent "noise" simply by being turned on, the oscilloscope would show electrical signals that deviate from this theoretical absolute zero level even if no sound content has been printed on the film medium. (*Id.*) Accordingly, an electronic signal appearing above or below the red line is not a true indicator of whether an audible sound is produced. (*Id.*)

Moreover, even if some sound is produced when the portion of the analog sound track containing the blue ovals is played by the projection equipment -- as alleged by Mr. Lehmann[5] -- that does not necessarily mean that such sound was added to the film medium by Deluxe's FCT Sound process. To the contrary, as explained above (*see supra* at 5-6), the sound track portion where the blue ovals appear has been exposed to an LED, thus *deleting* the sound content that had been located at that spot. As set forth below, the sound that Mr. Lehmann refers to was likely caused by either remnants of the sound content originally printed on the film at that location or by the transition from the audible sound track into and out of the mutes. (Flemming

[5] According to Mr. Lehmann, "the blue ovals are read out by the film projection equipment and alter the reproduced sound, but do not mute or silence the sound. The spectrograph shows that the reading of the blue ovals results in an altered low frequency sound signal, which may be perceived as an audible 'plop' sound." (Lehmann Decl., at ¶ 18).

Aff., ¶ 27). In either case, sound content has *not* been added to the film medium by Deluxe's FCT Sound process.

As explained by Mr. Flemming, when Deluxe applies its FCT Sound process to the analog sound track, the blue ovals do not necessarily remove all of the sound content that exists at that location. (*Id.* at ¶ 28). For example, the picture depicted below is an enlargement of the film medium picture which appears on page 6 above. (*Id.* at ¶ 28 & Ex. 6 thereto).



The points labeled "A" in white are portions of the analog sound track. (*Id.*) The point labeled "B" is one of the blue ovals formed by the Deluxe FCT Sound process. (*Id.*) Looking below the blue oval "B" in the enlargement, a small white area is visible below the oval on the left side. (*Id.*) This white area is sound content that was not deleted by the Deluxe FCT Sound process and, thus, may still be audible. (*Id.*) Critically, this sound content was *not* added by Deluxe's FCT Sound process.

Alternatively, the sound that Mr. Lehmann refers to may simply be the transition from the audible sound track into and out of the mutes. (Flemming Aff., ¶ 29). The human ear is very sensitive to abrupt changes in sound, and translates such changes into a "tick" sound. (*Id.*) No sound content has been added to the sound track being played back, but the human ear noticing a dramatic change creates the sound artifact. (*Id.*) In short, regardless of the cause of the sound Mr. Lehmann has identified, such sound is *not* a product of Deluxe's FCT Sound process.

Accordingly, because Deluxe's accused FCT Sound process involves the deletion of content from the medium and *not* "readable content *added* to a medium," Deluxe's process does not meet the "markings" claim term. (Supplemental Markman Ruling, at 4; *see also* SUF ¶¶ 17-21). Accordingly, the Court should grant summary judgment of no literal infringement. *See Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998) ("If even one limitation is missing or not met as claimed, there is no literal infringement.").[6] Furthermore, because there is no direct infringer, Deluxe cannot be liable for indirect infringement. *See Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993) ("Liability for either active inducement of infringement or for contributory infringement is dependent upon the existence of direct infringement.").

[6] Deluxe's FCT Sound process also does not infringe the '633 patent under the doctrine of equivalents. (*See* Moving Brief at 12-14).

**D. MPV's Remaining Arguments Lack Any Merit**

MPV raises several additional arguments in its Cross-Motion, none of which support denial of Deluxe's motion for summary judgment or granting summary judgment in favor of MPV. For example, MPV argues that Deluxe's FCT Sound process does not delete content because it does not involve the physical act of "erasing, removing or scraping away the previously white portions of the film print." (Cross-Motion at 11 (citing Wary Depo. Tr. at 66:12-20)). However, MPV fails to cite any support for the notion that a "deletion" must involve some sort of physical "erasing, removing or scraping." The reason for MPV's failure is obvious -- no such support exists. To the contrary, "delete" simply means "to strike out or remove (something written or printed); cancel; erase; expunge." (Bookbinder Decl., at Ex. B). Moreover, MPV concedes that "the blue ovals [generated by Deluxe's FCT Sound process] are imprinted over the existing analog sound track." (Cross-Motion at 1). The effect of this "imprint[ing] over" is the removal -- i.e., deletion -- of the previously printed analog sound track.

Similarly, MPV appears to place great weight on the fact that "Mr. Wary indicated that the word 'delete' is not normally used in the industry." (Cross-Motion at 11 (citing Wary Depo. Tr. at 37:6-25)). Although MPV correctly notes that Mr. Wary testified that the word "delete" is not commonly used in this field, MPV conveniently omits the fact that Mr. Wary repeatedly explained that Deluxe's mutes are the same thing as deletions:

> Q. And is there a distinction in your mind between the term "delete" and the term "mute"?
> A. No. It's just that we don't use the term "delete." We use the term "mute."
> * * *
> Q. And would you consider a mute to be the same as a deletion?
> A. Yes, it's probably not, not the way we refer to it. Most all the mutes. . . It's the absence of sound is a mute.

(Bookbinder Decl., at Ex. A (Wary Depo Tr., at 37:22-25 & 154:8-12)).

MPV also seems to believe that the fact that the mutes are added via "substantially the same process by which the original analog soundtrack is formed on the film print" somehow supports its infringement claim. (Cross-Motion at 7; *see also id.* at 11 ("Deluxe's self-serving characterization of the process ignores the fact that exposing the film to a light source is exactly the same method by which the analog soundtrack was written onto the film medium in the first place.")). However, this observation actually supports Deluxe and not MPV. Specifically, the fact that Deluxe's FCT Sound process is similar to the means by which the analog track is added to the film medium further bolsters the point that the FCT Sound process results in the deletion of the sound content previously located at the spot. In short, MPV has failed to raise a genuine issue of material fact sufficient to support denial of Deluxe's motion for summary judgment of non-infringement.

### E. MPV's Cross-Motion Should Be Denied For the Same Reason that Deluxe's Motion Should be Granted

MPV argues in its Cross-Motion that it is entitled to summary judgment of infringement of claim 19 of the '633 patent because Deluxe's accused FCT Sound process meets each claim limitation. (Cross-Motion at 15). However, as demonstrated in its Moving Brief (at 11-14) and above (*see supra* at 4-10), Deluxe does not employ the claimed "markings" and, thus, does not infringe the patent-in-suit. *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1161 (Fed. Cir. 1997) ("In order for there to be infringement, each and every limitation set forth in a patent claim must be found in the accused product, either literally or under the doctrine of equivalents."). Accordingly, MPV's Cross-Motion should be denied.

## III. CONCLUSION

For all of the foregoing reasons, Deluxe respectfully requests that the Court grant summary judgment of non-infringement of the '633 patent and deny MPV's cross-motion for summary judgment of infringement.

Dated: September 21, 2012

Respectfully submitted,

By: /s/ Allan A. Kassenoff

Scott J. Bornstein
E-mail: bornsteins@gtlaw.com
Allan A. Kassenoff
E-mail: kassenoffa@gtlaw.com
Julie P. Bookbinder
E-mail: bookbinderj@gtlaw.com
GREENBERG TRAURIG, LLP
MetLife Building
200 Park Avenue
New York, New York 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400

**COUNSEL FOR DELUXE ENTERTAINMENT SERVICES GROUP INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2012, the foregoing was served upon all counsel of record via electronic service.

/s/ Allan A. Kassenoff
Allan A. Kassenoff