IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MEDIEN PATENT VERWALTUNG AG, | |
| Plaintiff, | Civil Action No. 1:10-cv-04119-CM |
| v. | ECF Case |
| WARNER BROS. ENTERTAINMENT INC., TECHNICOLOR INC. and DELUXE ENTERTAINMENT SERVICES GROUP INC., | **JURY TRIAL DEMANDED** |
| Defendants. | |

**MPV'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS CROSS-MOTION
<u>FOR SUMMARY JUDGMENT OF INFRINGEMENT</u>**

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT..........................................................................................................................2

    A. Deluxe's Film Coding Process Adds "Markings" To A Film Medium....................2

    B. MPV's Infringement Analysis Is Fully Consistent With The Court's Claim Construction................................................................................................................5

    C. Deluxe's Film Coding Process Literally Satisfies Each And Every Element Of At Least Claim 19 Of The '633 Patent..................................................6

III. CONCLUSION.......................................................................................................................9

I.      **INTRODUCTION**

Plaintiff Medien Patent Verwaltung AG ("MPV") respectfully submits this reply memorandum in support of its pending Cross-Motion for Summary Judgment of Infringement (Dkt. No. 95). The resolution of the parties' competing summary judgment motions hinges on a single issue – application of the Court's construction of the claim term "markings" to the film sound coding process practiced by defendant Deluxe Entertainment Services Group Inc. ("Deluxe"). When that construction is properly applied, it is beyond dispute that the accused process not only meets the "markings" claim element, but also meets all the other elements of at least claim 19 of U.S. Patent No. 7,187,633 ("the '633 patent"). Accordingly, MPV's cross-motion for summary judgment of infringement should be granted (and Deluxe's motion for summary judgment denied).

Deluxe attempts to avoid summary judgment by applying a tortured interpretation of "markings" that is not supported by the Court's Supplemental Markman Ruling (Dkt. No. 84). Under the Court's claim construction, the "markings" element requires only that "readable content" be added to the medium, not "sound content" as Deluxe repeatedly argues. Deluxe takes this approach because the blue ovals that its sound coding process adds to the analog sound track do not produce words or musical notes – a type of "content" that one might ordinarily expect to find in a film sound track – but instead produce (at least according to Deluxe) instances of muffled or "muted" sound. Yet those blue ovals are no less "readable content" than if Deluxe had added a recorded voice reciting a serial number. As Deluxe concedes, when the marked portion of the analog sound track is read by film projection equipment, the series of alleged "mutes" resulting from playback of the marked sound track are interpreted as a code uniquely

1

identifying the film print. The blue ovals added by Deluxe are thus "markings" as that term is used in the '633 patent.

## II. ARGUMENT

### A. Deluxe's Film Coding Process Adds "Markings" To A Film Medium

The Court has construed the term "markings" to mean "readable content added to a medium that changes at least one readable property of a medium." (Supplemental Markman Ruling (Dkt. No. 84), at 4). "Markings" in the context of the '633 patent, according to the Court, therefore possess three attributes: (i) they must be readable content; (ii) they must be added to a medium, and (iii) they must change at least one readable property of a medium. The blue ovals formed in the analog sound track of a film print by Deluxe's film coding process indisputably possess these three attributes.

First, the blue ovals formed by Deluxe's film coding process are readable content. This fact is confirmed by Deluxe's own technical expert, Mr. Flemming, who explained how an analog sound track of a film print is played by film projection equipment. Sound is produced by passing light from an exciter lamp through the film medium to a photocell that converts the light to an electrical current. (Affidavit of Howard J. Flemming ("Flemming Aff.") (Dkt. No. 106), at ¶¶ 16-17). The sound produced varies based on the amount of light that shines through the film medium to the photocell. (*Id*. at ¶ 17; Lehmann Decl. (Dkt. No. 96), at ¶¶ 7-8). The blue ovals formed in the analog sound track by Deluxe's film coding process diminish the amount of light passing through the film medium and correspondingly diminishes the sound produced by the sound track. (*See* Flemming Aff., at ¶¶ 17-18). Whether that diminishment "mutes" the sound, as Deluxe contends, or simply alters it (Lehmann Decl., at ¶ 18), is irrelevant. In either case, the blue ovals have been read out by the film projection equipment. Indeed, the blue ovals must be

readable to provide the unique five digit code that identifies a particular film print. (*See* Wary Aff. (Dkt No. 92), at ¶¶ 4-5).

Deluxe's argument that the blue ovals do not add "sound content" to the film medium is merely a straw man. The Court's claim construction does not require that a "marking" be "sound content," and in fact that term is not found in the Court's definition. Rather, the construction requires the addition of "*readable* content." It is beyond dispute that the blue ovals (a) change the sound produced by the film projection equipment, and (b) convey information in the form of a code that uniquely identifies the film print when they are read out along with the rest of the analog sound track. (Reply Declaration of Gerhard Lehmann ("Lehmann Reply Decl."), at ¶¶ 8-10). Accordingly, the blue ovals are "readable content" as required by the Court's claim construction.

Mr. Flemming attempts to bolster Deluxe's misguided noninfringement defense by arguing that the sound graphs cited by Mr. Lehmann do not show that "sound content" was added to the film medium by Deluxe's coding process. (Flemming Aff., at ¶ 27 (stating, equivocally, that "[t]he sound that Mr. Lehmann refers to as a 'plop' may be caused by remnants of the sound content originally printed on the film, or it may be caused by the transition from the audible sound track into an out of the mutes") and ¶¶ 23-29).[1] But just like Deluxe, Mr. Flemming misses the point. Again, the Court did not hold that "markings" must comprise

---

[1] Mr. Flemming also attempts to discredit Mr. Lehmann's declaration by quibbling with what Mr. Lehmann called the sound graph attached to his declaration. As Mr. Lehmann explains, this was nothing more than the result of English being his second language. The important point is what the graph shows, namely, that the projection equipment reads the coded portion of the analog sound track where the blue ovals were added, and the results are interpreted as a unique code. (Lehmann Reply Decl., at ¶¶ 4-7).

3

"sound content," but rather "*readable* content."  And not even Mr. Flemming denies that when the projection equipment reads the portion of the analog sound track coded by Deluxe's process, the pattern of blue ovals added to the medium conveys information that is interpreted as a five-digit code.

Second, the blue ovals plainly are added to the medium. Contrary to what one might glean from Deluxe's "deletion" argument, the blue ovals are not the result of erasing the white portions of the analog sound track to reveal areas of blue underneath.[2]  Rather, upon exposure of selected portions of the film medium to an LED during Deluxe's film coding process, the blue ovals are formed (i.e., added) to the film medium.  (*See* Flemming Aff., at ¶ 23; Wary Aff., ¶ 8).

Finally, the blue ovals added by Deluxe's film coding process change a readable property of the film medium.  The analog sound track is optically read by the film projection equipment to produce sound, and the addition of the blue ovals changes the optical property of the film by inhibiting light from passing through the film to the photocell. (*See* Flemming Aff., at ¶¶ 16-18; Lehmann Decl., at ¶¶ 7-8, 11).

In sum, the record demonstrates beyond dispute that the blue ovals formed on the analog sound track by Deluxe's film coding process are "readable content added to a medium that changes at least one readable property of a medium," and therefore constitute "markings" as that term has been construed by this Court.

---

[2] Deluxe's suggestion that it's coding process deletes content from the film medium is further belied by its disclosure that the process can alternatively be performed *before* the analog sound track is applied to the film (Deluxe Reply, at 5, n.2), in which case there would be nothing to delete.

### B. MPV's Infringement Analysis Is Fully Consistent With The Court's Claim Construction

Far from rearguing the Court's claim construction as Deluxe charges, MPV has presented an infringement analysis that is fully consistent with the Court's construction of the term "markings." If anything, it is Deluxe that is rearguing claim construction by attempting to import a "sound content" limitation that simply does not appear in the Court's ruling.

It makes no difference whether Deluxe's film coding process results in a muting of the sound that is reproduced by the film projection equipment or, as shown by the inventor, Mr. Lehmann, in an altered sound signal that is audibly perceivable (Lehmann Decl., at ¶ 18; Lehmann Reply Decl., at ¶¶ 4-7), because both comprise "readable content." Were this not so, it would be possible to interpret the portion of the sound track altered by the addition of blue ovals as a unique code when it is read out by the projection equipment. Again, the Court's construction of "markings" does not restrict the form of content added to the medium other than to require that it be "readable."

Deluxe's misinterpretation of the Court's claim construction is further evident in its misplaced reliance on the Court's comment that "markings" cannot consist of material that is deleted from the medium. But the Court's discussion concerning deletions has no relation to how a change to a readable property of the medium is interpreted upon being read, which, in Deluxe's view, is a muting of the sound reproduced by the film projection equipment.

First, the Court noted that the code used to identify the medium is translated from the pattern formed by the presence of markings and the absence of markings. (*See* Dkt. No. 84, at 3). The Court further recognized that the absence of a marking does not necessarily indicate that something has been deleted from the medium, since it could also indicate that nothing has been added. (*Id.*). From this, the Court concluded that "it fairly implies that markings are added to

5

the medium, and *the sequence of markings and lack of markings* (i.e., blank spaces) creates a unique code that identifies a particular print of a film as authentic." (*Id.*, emphasis in original). Deluxe's film coding process falls squarely within this description. The blue ovals are added to the film medium and their presence, in sequence with the absence of any blue ovals in those portions of the film that are not re-exposed by the LED light, result in a unique five digit code that identifies the film print. (Wary Aff., at ¶¶ 4-5).

Significantly, the Court's conclusion that "markings" cannot consist of material deleted from the medium is based on the teaching of the '633 patent as to how the film projection equipment can be forced to "fall back" to read the analog sound track in place of the preferred higher-quality digital sound track. (*See* Dkt. No. 84, at 3). To force the projector to fall back, the digital sound track is made unreadable by techniques that physically remove material from the medium, such as laser etching, scratching, cutting, nicking or scraping the film. (*See* '633 Patent at column 7, line 63 – column 8, line 10). The Court concluded that these changes to the digital sound track are not "markings" because they are unreadable (and indeed, purposely so). (Dkt. No. 84, at 3). In sharp contrast, the blue ovals added by Deluxe's film coding process are not the result of physically removing any material from the film medium. Rather, they are added to the medium using the same exposure process used to write the analog sound track to the film, and they are necessarily readable or they could not be interpreted as a unique code that identifies a particular film print.

**C.   Deluxe's Film Coding Process Literally Satisfies Each And Every Element Of At Least Claim 19 Of The '633 Patent**

In addition to satisfying the "marking" element for the reasons discussed above, there is no genuine dispute that Deluxe's film coding process satisfies all of the other elements of claim 19 of the '633 patent. The chart below confirms Deluxe's infringement.

| Element of Claim 19 | Deluxe's Film Coding Process | Deluxe's Position |
|---|---|---|
| 19. A method of marking a film medium, | Deluxe's film coding process applies a code to a film print, which is a film medium. (Local Rule 56.1 Statement of MPV ("SMF"), at ¶¶ 25-26). That code is shown below in Deluxe's film print: | Not disputed by Deluxe. (Dkt. No. 107 at ¶¶ 25, 34, 35, 38). |
| in which information is contained in a continuous sequence for reproduction, | The film print above contains a continuous sequence of information including the picture frames and the analog and digital sound tracks. (SMF, at ¶¶ 28-29). The information in the form of picture frames and sound tracks is for reproduction, or playback or presentation in a perceivable manner (e.g., theatrical exhibition) (SMF, at ¶¶ 28-32). | Not disputed by Deluxe. (Dkt. No. 107 at ¶¶ 28-32). |
| wherein said film medium includes a first section containing analog information and | Deluxe's film print, shown again below, includes an analog sound track below the sprocket holes and above the picture frames. (SMF, at ¶ 24). The analog sound track contains analog information and is separate from the picture frames and the digital sound tracks. | Not disputed by Deluxe. (Dkt. No. 107 at ¶ 24). |
| a second section containing digital information, | The Deluxe film print shown above includes a digital sound track between the sprocket holes which contains digital information and that is separate from the analog sound track and the picture frames. (SMF, at ¶ 31). | Not disputed by Deluxe. (Dkt. No. 107 at ¶ 31). |

7

| Element of Claim 19 | Deluxe's Film Coding Process | Deluxe's Position |
|---|---|---|
| said analog information corresponding with said digital information, said method comprising the steps of: | The analog information contained in the analog sound track corresponds, or is redundant to, the digital information contained in the digital sound track to permit the analog track to be read by the film projection equipment as a back up to the digital sound track. (SMF, at ¶ 33). | No genuine dispute raised by Deluxe. (Dkt. No. 107 at ¶ 33). |
| forming a sequence of markings on said first section, | Deluxe's sound coding process adds blue ovals to the analog sound track of a picture film. (SMF, at ¶¶ 34-38). As shown below in the Deluxe film print, the at least two blue ovals form a sequence, or a series or set of two or more, on the analog sound track. | No genuine dispute raised by Deluxe. (Dkt. No. 107 at ¶¶ 34-38). |
| said markings individualizing said medium and | The combination of the blue ovals and the unaltered portions of the analog sound track are read together to individualizes, or permits identification of the film print. (SMF, at ¶ 38). | Deluxe admits that the inclusion of the blue ovals on the analog sound track "result in a unique five digit code, and that the code pattern provides the unique print number and destination for the film print" and that the "five-digit code is unique to each print and identifies the print." (Dkt No. 107 at ¶ 38). |
| being readable together with said analog information; and | The blue ovals are read by film projection equipment along with the analog sound track. (SMF, at ¶ 37). | No genuine dispute raised by Deluxe. (Dkt. No. 107 at ¶¶ 23-24, 37). |

8

| Element of Claim 19 | Deluxe's Film Coding Process | Deluxe's Position |
|---|---|---|
| eliminating or making unreadable digital information in at least a part of said second section corresponding to said sequence of markings on said first section. | As shown below on the Deluxe film print that has undergone Deluxe's sound coding process, a wide blue strip has been formed on the digital sound track between the sprocket holes. (SMF, at ¶ 39).<br><br>Those portions of the digital sound track with the blue line are unreadable and forces the projection equipment to fall back to and read the analog sound track with the blue ovals formed by Deluxe's film coding process. (SMF, at ¶ 39). | Not disputed by Deluxe. (Dkt. No. 107 at ¶ 39). |

The only supposed "dispute" that Deluxe purports to raise is based solely on its erroneous argument that the blue ovals formed on the analog sound track by its film coding process are not readable content added to the film medium. However, MPV has clearly demonstrated above that those blue ovals are "markings" under the Court's claim construction, and no reasonable jury could find otherwise. Summary judgment in favor of MPV is therefore appropriate.

### III. CONCLUSION

For all of the foregoing reasons, MPV's cross-motion for summary judgment of infringement should be granted and, conversely, Deluxe's motion for summary judgment of noninfringement should be denied.

Dated:  October 5, 2012       By:   s/ Sean E. Jackson
                                                         Andrew M. Riddles
                                                         Sean E. Jackson
                                                         **CROWELL & MORING LLP**
                                                         590 Madison Avenue
                                                         New York, NY  10022-2544
                                                         Ph:  (212) 223-4000
                                                         Fax:  (212) 223-4134
                                                         ariddles@crowell.com
                                                         sjackson@crowell.com

                                                         Jeffrey D. Sanok
                                                         Mark M. Supko
                                                         **CROWELL & MORING LLP**
                                                         1001 Pennsylvania Avenue, N.W.
                                                         Washington, D.C.  20004-2595
                                                         Tel:  (202) 624-2500
                                                         Fax:  (202) 628-5116
                                                         jsanok@crowell.com
                                                         msupko@crowell.com

                                                         *Attorneys for Plaintiff Medien Patent*
                                                         *Verwaltung AG*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 5, 2012, a true and correct copy of the foregoing MPV'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT was served to all counsel of record via the Court's CM/ECF system and via electronic mail as follows:

Phoebe Anne Wilkinson, Esq.
**CHADBOURNE & PARKE LLP**
30 Rockefeller Plaza
New York, NY  10112
(212) 408-1157
Fax:  (212) 541-5369
pwilkinson@chadbourne.com

Daniel M. Lechleiter, Esq.
Richard Trevor Carter, Esq.
**FAEGRE BAKER DANIELS LLP**
300 North Meridian Street, Suite 2700
Indianapolis, IN  46204
(317) 237-0300
Fax:  (317) 237-1000
trevor.carter@faegrebd.com
daniel.lechleiter@faegrebd.com

*Attorneys for Defendants Warner Bros. Entertainment, Inc. and Technicolor Inc.*

Scott J. Bornstein, Esq.
Allan A. Kassenoff, Esq.
Julie P. Bookbinder, Esq.
**GREENBERG TRAURIG, LLP**
MetLife Building
200 Park Avenue, 34th Floor
New York, NY  10166
(212) 801-9200
Fax:  (212) 801-6400
bornsteins@gtlaw.com
kassenoffa@gtlaw.com
bookbinderj@gtlaw.com

*Attorneys for Defendant Deluxe Entertainment Services Group Inc.*

                                            s/ Sean E. Jackson
                                            Sean E. Jackson