IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MEDIEN PATENT VERWALTUNG AG,<br><br>Plaintiff,<br><br>v.<br><br>WARNER BROS. ENTERTAINMENT INC., TECHNICOLOR INC. and DELUXE ENTERTAINMENT SERVICES GROUP INC.,<br><br>Defendants. | Civil Action No. 1:10-cv-04119-CM<br><br>ECF Case |

### REPLY DECLARATION OF GERHARD LEHMANN

I, Gerhard Lehmann, declare:

1. I respectfully submit this Reply Declaration in support of Medien Patent Verwaltung AG's ("MPV") cross-motion for summary judgment of infringement. I previously submitted a Declaration on September 7, 2012 in support of MPV's cross-motion and in opposition to Deluxe Entertainment Services Group Inc.'s ("Deluxe") motion for summary judgment of non-infringement ("First Declaration").

2. As set forth in my CV attached as Exhibit 1 to my First Declaration, I have nearly 50 years of experience in the field of film and audio printing technology, including extensive experience in production and post-production of picture and sound in all commercial analog and digital technologies. I have pioneered technology relating to film and audio transfer to video

1

tape, and I have been responsible for leading innovations in the technical field of film subtitling. I have been awarded several U.S. and international patents for my inventions relating to film subtitling technology and the anti-piracy technology involved in this matter, which focuses on the manner in which sound is recorded and played back using the digital and analog tracks of celluloid film.

3. I have reviewed the parties' summary judgment briefing to date, along with the supporting affidavits, and exhibits, including the Affidavit of Howard J. Flemming, dated September 21, 2012 ("Flemming Affidavit"). Below I address some points raised by Mr. Flemming in his affidavit.

4. While Mr. Flemming takes issue with my characterization of image "B" in Exhibit 3 to my First Declaration (Flemming Affidavit, at ¶ 19), image B is obviously an oscillogram printed from an oscilloscope. Oscilloscopes are designed to depict changes in an electric quantity over time, such as voltage or current. But since image B specifically depicts changes in the electronic representation of sound, I referred to the image as a "sound spectrograph," a term that I considered to be more descriptive. Any confusion in terminology is attributable to the fact that English is not my native language, but there is no confusion, either on my part or Mr. Flemming's, regarding what image B shows.

5. Without question, image B provides graphic proof that the reading of the blue ovals in the analog sound track alters the sound output from the film projection equipment. Specifically, an altered low frequency sound is produced along with a peak that represents a significant increase in volume as the blue oval is finished being read by the film projection equipment. I found the same alteration in sound output shown in a sonogram, which represents a sound signal using coordinates of frequency, time, and intensity. Accordingly, it is not what you

call the image that is important, but rather the fact that when the blue ovals are read by film projection equipment, they alter the sound output.

6. Whether image B is referred to as a sound spectrograph, spectrogram, or a plot generated by an oscilloscope, even Mr. Flemming must concede that image B illustrates the output that results from the reading the portion of the analog sound track of the film print containing Deluxe's blue ovals. In other words, image B provides a graphical representation of the electrical signal corresponding to the sound that is generated by the film projection equipment when reading the portion of the analog sound track of the film print containing Deluxe's blue ovals. This image clearly shows that the blue ovals added by Deluxe's process result in a distinct, detectable sound pattern that is picked up (or "read") by the projectors' audio playback equipment.

7. Mr. Flemming also takes issue with my characterization of the red line that runs across the center of the oscillogram representing silence, and that any movement either upward or downward from the red line represents an increase in the volume of sound. Mr. Flemming's suggestion that the oscillogram is not accurate because the variations could be the result of "inherent noise" is misleading. The electrical signal shown in image B of Exhibit 3 is representative of how the film projection equipment reads and interprets the full length of the analog sound track of the film print depicted in image A, including the blue ovals. As illustrated in image B, the blue ovals alter the electrical signal produced by the film projection equipment when it reads the analog sound track, and thus alter the resulting sound. This alteration in sound is sufficiently unique compared to the remainder of the soundtrack that it provides the code that uniquely identifies a film print.

3

8. In paragraphs 25-30 of his affidavit, Mr. Flemming goes on at great length to criticize my declaration and explain that "sound content" is not added to the film print by Deluxe's "FCT Sound" coding process. Mr. Flemming mischaracterizes the statements in my First Declaration. At no point do I state that "sound content" is added to the film print.

9. The blue ovals added to the film print by Deluxe's "FCT Sound" process change the optical properties of the analog sound track. As I state above, the blue ovals produce a sound when read out by the film projection equipment to provide a code that uniquely identifies the particular film print. Thus, the blue ovals are readable content because they are read out by the film projection equipment as shown in image B, which shows an output waveform that is distinguishable from the rest of the audio sound track, and provide a unique code to identify the particular film print.

10. The specific effect the blue ovals added by Deluxe's "FCT Sound" process have on the sound produced by the film projection equipment is not relevant, provided the blue markings are read out to provide an identifying code. The important concept is that the addition of the blue ovals changes the sound that is produced by the film projection equipment when the blue ovals are read out along with the analog sound track, and does so in a way that can later be interpreted as a code that uniquely identifies the particular film print. I discuss this change in paragraphs 15-18 of my First Declaration. However, the change in sound resulting from the addition of the blue ovals does not necessarily mean that, as asserted by Mr. Flemming, "sound content" is added to the film medium, if by "sound content" he means recognizable words or sound effects. Rather, the blue ovals need only be readable content that <u>changes</u> the produced sound when read out by the film projection equipment in a manner that can be detected and interpreted as an identifier.

4

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 5th day of October, 2012.

By: _____
Gerhard Lehmann