UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------x

MEDIEN PATENT VERWALTUNG AG,

          Plaintiff,

   -against-                              10 Civ. 4119 (CM)

WARNER BROS. ENTERTAINMENT, INC.,
TECHNICOLOR INC., and DELUXE
ENTERTAINMENT SERVICES GROUP INC.,

          Defendants.

----------------------------------------x

**AMENDED DECISION AND ORDER DENYING DEFENDANT DELUXE ENTERTAINMENT SERVICE GROUP INC.'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

McMahon, J.:

This patent case is about anti-piracy technology for motion picture film stock. On May 19, 2010, Plaintiff Medien Patent Verwaltung AG ("Plaintiff") commenced an infringement action against Defendants Warner Bros. Entertainment, Inc. ("Warner Bros."), Technicolor Inc. ("Technicolor"), and Deluxe Entertainment Services Group Inc. ("Deluxe"). Plaintiff filed a virtually identical amended complaint on May 21. Plaintiff alleges that Defendants have directly and indirectly infringed Plaintiff's patent: U.S. Patent No. 7,187,633 (the "'633 Patent"). On August 16, Deluxe asserted counterclaims of non-infringement and patent invalidity against Plaintiff. Deluxe submitted an amended answer with the identical counterclaims on September 14, 2012.

On January 6, 2012 I issued my First *Markman* Ruling, construing the '633 Patent claims disputed by the parties, with the exception of the word "markings." (Docket No. 70.) I

1

determined that extrinsic evidence was required to reach a final construction of that term. (*Id* at 5.) I reached that final construction in my Supplemental *Markman* Ruling, issued on March 7. (Docket No. 84.)

Deluxe now moves for summary judgment on the ground of non-infringement of the '633 Patent. Deluxe's only argument on summary judgment is that its technology does not produce "markings" on motion picture film stock, as I have construed that term.

Plaintiff has cross-moved for summary judgment against Deluxe on the limited ground of literal infringement of Claim 19 of the '633 Patent. (Pl.'s Opp'n/Support Br. at 8 n. 2.)

For the reasons set forth herein, Deluxe's motion for summary judgment is DENIED and Plaintiff's cross-motion for summary judgment is GRANTED.

## BACKGROUND[1]

I. The '633 Patent

A. The Basics

The '633 Patent, "Marking of a Data Medium Material for Information Intended for Reproduction," was issued on March 6, 2007. (Declaration of Sean E. Jackson, Esq. ("Jackson Decl."), Ex. 1 at 1.) Simply put, the technology described therein is aimed primarily at combating motion picture piracy by placing an "individualizing" (or identifying) sequence of bar-like markings on a motion picture film print. When the film is run through a projector, these markings are "read out," thereby producing a unique binary[2] identification code that permits pirated copies of films to be traced back to a particular print. This, apparently, can be of assistance in tracking down and apprehending pirates.

---

[1] The following facts are drawn from the pleadings and the record on the parties' summary judgment motions. The facts (i.e., the specifics of how Plaintiff and Deluxe's respective technologies work) are not in dispute. Rather, the dispute centers, in the first instance, on my construction of the term "markings" in the '633 Patent.

[2] A bar is read as a "1"; the absence of a bar is read as a "0".

The '633 Patent works as follows. Using either mechanical or non-contact methods, bar-like markings are formed on the analog sound track of a film print. Motion picture film stock also has as many as three digital sound tracks, which are of higher sound quality. A film projector reads out the digital sound tracks in the first instance; the analog sound track is there, in essence, as a backup. Under the '633 Patent, the portions of the digital sound tracks that correspond to where the markings have been placed on the analog sound track are deleted or otherwise rendered unreadable. This forces the film projector to "fall back" to the analog sound track, which results in the identifying markings being piped out through the theater's speakers. The change in sound is (ideally) imperceptible to the audience, but will be picked up in pirated recordings of the movie, thus making them traceable.

Claim Term 19, which is at the heart the dispute between Plaintiff and Deluxe, encapsulates this process:

> 19. A method of marking a film medium, in which information is contained in a continuous sequence for reproduction, wherein said film medium includes a first section containing analog information and a second section containing digital information, said analog information corresponding with said digital information, said method comprising the steps of: forming a sequence of markings on said first section, said markings individualizing said medium and being readable together with said analog information; and eliminating or making unreadable digital information in at least a part of said second section corresponding to said sequence of markings on said first section.

(Jackson Decl., Ex. 1 at column 10, lines 53-65.)

### B. The Court's Claim Construction

As indicated above, the only claim construction at issue on summary judgment is my construction of the term "markings." In my Supplemental *Markman* Ruling, I construed "markings" to mean "readable content added to a medium that changes at least one readable property of a medium." (Docket No. 84 at 4.) I further clarified that "the markings claimed by

the '633 Patent must consist of content that is added to the medium; the patent does not teach markings that consist of deletions from the medium." (*Id.* at 3.) Indeed, deletions of information from the medium "are not 'markings' because they cannot be read out." (*Id.*) "[T]he entire purpose of making the disclosed deletions [in the '633 Patent] is to cause the projector *not* to read that portion of the digital soundtrack – but rather to 'deliberately prevent[]' the reading out of the digital soundtracks." (*Id*) (emphasis in original.)

## II. Deluxe's Accused Technology

Deluxe's technology (referred to as the "FCT Sound process") also allows a film print to be individualized, thus rendering it traceable for anti-piracy purposes. The FCT Sound process works as follows.

The analog sound track on a reel of Deluxe's film appears directly below the "sprocket holes" and directly above the image information. (*See* Affidavit of Joseph Wary ("Wary Aff."), Ex. A.) It appears as a blue strip with irregular white bands that constitute the analog sound information. (*Id.*) Deluxe's film also has at least one digital sound track that appears between the sprocket holes. (*Id.*)

During the FCT Sound process, specific portions of the analog sound track are exposed to a light emitting diode (LED), which forms "blue ovals" on the analog sound track. (*Id.*) Deluxe styles these blue ovals as "deletions" of sound content. (Deluxe's Statement of Undisputed Facts ("Deluxe's 56.1 Stmt") ¶¶ 17, 21.) Plaintiff disagrees that the FCT Sound process deletes sound content. (Plaintiff's Local Rule 56.1 Statement ("Pl.'s 56.1 Stmt") ¶¶ 17, 21, 27.) The parties agree, however, that the blue ovals are also referred to in the industry as "mutes" or "micro-second cancellations."

4

The analog sound track of Deluxe's film produces audible sound when it is fed through a projector's audio pickup, which uses a lamp to pass light (an optical property) through the analog sound track to a photocell that converts the light to an electrical current, which is then amplified and played through the movie theater's speakers. The sound produced varies based upon the amount of light that shines through the analog sound track to the photocell. The blue ovals on the analog sound prevent light from passing through the film to the photocell, which mutes the sound produced by the analog sound track. These mutes produce a unique five digit code that allows pirated copies to be traced back to a particular print. The code is hidden in sound effects so that (ideally) it is not noticeable to the audience.

Deluxe is vague about how the blue ovals result in a perceptible five digit code. On the one hand, Deluxe appears to contest Plaintiff's assertion that the blue ovals are read by the projector. (Deluxe's Counter-Statement ("Deluxe's Cntr-Stmt") ¶ 37.) On the other hand, Deluxe acknowledges that the code is hidden in the film's sound effects. Moreover, Deluxe does not dispute that the FCT Sound process disables portions of the digital sound track of the film print[3] so that the projector falls back to and *reads* the corresponding portions of the analog sound track.

## DISCUSSION

### I.  Standard of Review

A party is entitled to summary judgment when there is "no genuine issue as to any material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 247–48 (1986). On a motion for summary judgment, the court must view the record in the light most favorable to the

---

[3] The disabled digital sound track appears as a thick blue line running between the sprocket holes. (*See* Wary Aff., Ex. B.)

nonmoving party and draw all reasonable inferences in its favor. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the nonmoving party must present "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998). Moreover, not every disputed factual issue is material in light of the substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Anderson*, 477 U.S. at 248.

To withstand a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Instead, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmoving party. Summary judgment is designed to flush out those cases that are predestined to result in directed verdict. *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir.1997).

Summary judgment is appropriate in a patent case, as in other cases, when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646 (Fed. Cir. 1994). In particular, summary judgment can be entered in a case alleging infringement of a patent. *Avia Grp. Intern., Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1560 (Fed. Cir. 1988).

## II. Deluxe's Blue Ovals Are Markings

As noted above, I have construed the term "markings" to mean "readable content added to a medium that changes at least one readable property of a medium." (Docket No. 84 at 4.) I conclude that Deluxe's blue ovals meet this definition, and a reasonable jury could not find otherwise.

### A. The Blue Ovals Are "Added to a Medium"

The crux of Deluxe's case is that, because the FCT Sound process "deletes" sound content from the analog sound track, the blue ovals are not "additions" to the film stock. Deluxe misses the point. It is the blue ovals themselves that are "added to the medium" – the fact that the blue ovals work by deleting sound changes nothing. Deluxe all but admits this by not disagreeing with Plaintiff's characterization that "The blue ovals *formed by* the LED are *written* or *imprinted* onto the film print, either before or after the printing of the analog sound track." (Pl.'s 56.1 Stmt ¶ 25; *see also* Deluxe's Cntr-Stmt ¶ 25.) They are, therefore, "added" to the "medium" (the film print).

The conclusion that the blue ovals are added to film stock is only strengthened by the example I provided of a "deletion" of information from the medium (i.e., the antithesis of an addition) in my Supplemental *Markman* Ruling. (*See* Docket No. 83 at 3.) Under the '633 Patent, portions of the digital sound tracks are removed or otherwise rendered unreadable, in order to force the projector to fall back to and read out the corresponding portions of the analog sound track, where identifying bar-like markings have been added to the medium. Thus, the digital sound tracks are not read, because their content has been deleted.

Deluxe's technology works in exactly the same way. Portions of the digital sound track are rendered unreadable, which forces the projector to fall back to and read out the corresponding

7

portions of the analog sound track, where blue ovals have been added. Here, too, then the projector fails to read the digital sound track, because its content has been deleted. Whether the blue ovals delete sound content from the analog sound track is irrelevant,[4] because the blue ovals are themselves content that has been added to the medium. Put differently, "deletion" involves the removal of content; the blue ovals, which are added to the film stock, are not deletions.

### B. The Blue Ovals "Change at Least One Readable Property of a Medium"

The blue ovals plainly change a readable property of the medium. There is no dispute that the addition of the blue ovals changes the optical property of the film by inhibiting light from passing through the film to the photocell. Apparently, they also change a mechanical property by deleting sound – at least indirectly.

### C. The Blue Ovals Are "Readable Content"

According to Deluxe's expert, Howard J. Flemming, "When the film medium is *read* by the projection equipment, it passes through . . . [the] audio pickup." (Affidavit of Howard J. Flemming ("Flemming Aff.") ¶ 16) (emphasis added.) The audio pickup, as described above, shines light through the analog sound track to a photocell that converts the light into an electrical current, which results in audible sound. "If there is a portion of the sound track that does not have irregular transparent lines to allow light to pass to the photocell, i.e. there is no white portion that is visible, then no sound is produced from the sound track during playback." (Affidavit of Howard J. Flemming ("Flemming Aff.") ¶ 18.) Thus, it is plain that the blue ovals

---

[4] However, there is an argument that the sound content is not in fact deleted in some instances. In a footnote in its reply brief, Plaintiff notes that Deluxe acknowledges that the FCT Sound process can be performed before the analog sound track is even applied to the film. (Pl.'s Reply at 4 n. 2.) In other words, the blue ovals are formed on the film stock before the analog sound information itself is laid down. How do you delete something before it exists? Fortunately, that is a metaphysical conundrum I need not resolve.

– which inhibit light from passing through the analog sound track – are read by the projector and interpreted as silences as the analog sound track passes through the audio pickup.

Joseph Wary, a co-inventor of U.S. Patent No. 7,394,519 (the "'519 Patent"), which describes Deluxe's FCT Sound process, confirms this understanding of how Deluxe's technology works. When asked at his deposition whether "the ovals are *read* every time the film is shown," Wary responded, "Correct." (Jackson Decl., Ex. 3 at 77:17-77:19) (emphasis added.)

Finally, Deluxe admits that the code is buried in the film's sound effects, which can lead to no other conclusion than the code (i.e., the blue ovals) is read out along with those sound effects.

Accordingly, I conclude that Deluxe's blue ovals constitute "readable content."

### III. Deluxe's Technology Infringes On the '633 Patent

There is no dispute as to how the FCT Sound process works. Deluxe does not contest infringement on any grounds beyond its argument that the blue ovals do not constitute markings. Plaintiff, by contrast, has produced, in its opposition and reply briefs (at 17-19 and 7-9, respectively), a chart that breaks up Claim 19 limitation-by-limitation and clearly demonstrates that Deluxe either cannot or does not dispute that its technology reads on every one of them. Where Deluxe does disagree with Plaintiff's characterization of its technology, those disagreements are either not material (*see, e.g.,* Deluxe's Cntr-Stmt ¶¶ 33, 38) or pertain to its argument that the blue ovals are not markings, which I have already found to be without merit. Accordingly, I agree with Plaintiff that the FCT Sound process infringes on the '633 Patent, and thus Plaintiff is entitled to summary judgment on the limited issue of infringement. *See Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372, 1377 (Fed. Cir. 2008); *MyMail, Ltd. v. Am.*

*Online, Inc.*, 476 F.3d 1372, 1378 (Fed. Cir. 2007); *V-Formation, Inc. v. Benetton Grp. SpA*, 401 F.3d 1307, 1312 (Fed. Cir. 2005).

However, this does not dispose of the case, because, as noted at the opening of this opinion, Deluxe has asserted a counterclaim of patent invalidity against Plaintiff. Neither of the parties addresses the issue of invalidity in their summary judgment motions. So while the FCT Sound process plainly infringes on the '633 Patent, I cannot enter judgment for Plaintiff, because the issue of invalidity has yet to be addressed.

## CONCLUSION

For the reasons stated above, Deluxe's motion for summary judgment on the grounds of non-infringement is DENIED and Plaintiff's cross-motion for summary judgment on the grounds of infringement is GRANTED. If, however, Plaintiff cannot prevail on the issue of the '633 Patent's validity, judgment will have to be entered for Deluxe.

Dated: February 11, 2013

_____
U.S.D.J.

BY ECF TO ALL COUNSEL

10